Pittsburgh-Des Moines Steel Co., Inc., Appellant
v. Leo J. McLaughlin et al., Appellees.

Pittsburgh-Des Moines Steel Co., Inc., Appellant
v. Leo J. McLaughlin et al., Appellees.

Argued September 15, 1983, before Judges CRAIG, BARRY and BLATT, sitting as a panel of three.

*Henry T. Reath*, with him *Alexis J. Anderson* and *Barbara E. Sanson, Duane, Morris & Heckscher*, and

*Andrew L. Weil, Rose, Schmidt, Dixon, Hasley, Whyte & Hardesty*, for appellant.

*Vincent A. Tuzceri*, with him *Robert L. Federline, Thomas J. Dempsey, William P. Bresnahan* and *Larry P. Gaitens*, for appellees.

OPINION BY JUDGE CRAIG, October 17, 1983 :

In this consolidated appeal, Pittsburgh-Des Moines Steel Company (PDM) challenges two orders which the Court of Common Pleas of Allegheny County entered in PDM's appeal to that court, seeking reduction of the tax assessment for its industrial property;[1] the first order established the fair market value and tax assessment for PDM's property, and the second dismissed PDM's exceptions to the earlier order.

We must decide (1) whether the trial court properly dismissed PDM's exceptions, and whether that court (2) based its determination of the fair market value of the property on competent and relevant evidence, (3) erred in evidentiary rulings, or (4) erroneously increased the tax assessment.

PDM initially appealed the tax assessment to the Board of Property Assessment, Appeals and Review. That board lowered the assessment, but PDM nevertheless appealed the board's decision to the court of common pleas. After trial, that court increased the assessment for PDM's property; however, the court's figure remains below that of the original assessment.

### 1. Dismissal of Exceptions

Because no procedural rule or order provides for the filing of exceptions in this statutory appeal proceeding, we affirm Administrative Judge PAPADAKOS'

---

[1] The local taxing authorities include Allegheny County, Neville Township and the Cornell School District.

order, dated October 26, 1982, which dismissed PDM's exceptions. *Appeal of Sgro*, 67 Pa. Commonwealth Ct. 304, 447 A.2d 325 (1982).

## 2. Determination of Fair Market Value

PDM contends that the trial court erroneously based its determination of fair market value on the appraisal report and testimony of the taxing authorities' expert, Mr. Ellis, who allegedly had employed impermissible methods of valuation in reaching his opinion. More specifically, PDM argues that Ellis used the reproduction cost and value-in-use methods, both of which are inadmissible to establish the fair market value of the property.[2] Therefore, PDM contends, the testimony of its expert, Mr. Coyle, was the only competent evidence on the question of fair market value.

In a tax assessment appeal, the trial court hears the case de novo and must determine the fair market value of the property based on the competent, credible and relevant evidence. If, as is typically true, the expert testimony conflicts, the trial court must determine the weight and credibility it will afford to each expert. An appellate court will not disturb a trial court's finding on fair market value in the absence of an abuse of discretion, insufficient supporting evidence or clear legal error.[3]

The record indicates that each of the parties' experts possessed ample credentials in the area of prop-

---

[2] On the reproduction cost method *see Baldwin-Lima-Hamilton Corp. Appeal*, 412 Pa. 299, 194 A.2d 434 (1963) ; *Appeal of Chartiers Valley School District*, 67 Pa. Commomnwealth Ct. 121, 447 A.2d 317 (1982), appeal dismissed    Pa.   , 456 A.2d 986 (1983) ; *Appeal of New Castle Central Renewal Associates*, 36 Pa. Commonwealth Ct. 584, 389 A.2d 225 (1978).

[3] *Appeal of Chartiers Valley School District*, 67 Pa. Commonwealth Ct. 121, 447 A.2d 317 (1982), appeal dismissed    Pa.   , 456 A.2d 986 (1983).

erty valuation and that they arrived at widely disparate opinions of the fair market value of PDM's property. The taxing authorities' expert, Ellis, stated on cross-examination that he had used the cost reproduction method in his report as a personal check of his figures. He also stated that he did not rely upon that method in testifying as to his opinion of fair market value.

Because Ellis's report was not part of the evidence in this case, the trial judge's conclusions do not rest upon it. The record contains no proof that either the trial court or Ellis impermissibly relied on the reproduction cost method. Moreover, the trial judge specifically recognized the necessity of avoiding the use of that technique.

The situation is similar to *Pocono Downs, Inc. v. Board for the Assessment and Revision of Taxes for Luzerne County*, 11 Pa. Commonwealth Ct. 81, 312 A.2d 452 (1973), where the only evidence of the expert's use of the cost method was adduced on cross-examination, and the expert stated he had merely correlated the figures from that approach with his opinion of fair market value. The court concluded in *Pocono*, and we conclude here, that such a personal and incidental reference to the reproduction cost approach is not error.[4]

PDM also contends that Ellis employed the value-in-use method[5] in reaching his opinion on fair market

---

[4] Our conclusion is consistent with the statement in footnote 11 of *Appeal of Chartiers Valley School District*, 67 Pa. Commonwealth Ct. 121, 447 A.2d 317 (1982), appeal dismissed        Pa.    , 456 A.2d 986 (1983), that the results of the reproduction cost method cannot be relied upon in court.

[5] The value-in-use method is based upon the value to the current user, which may, of course, be higher than the value in the marketplace. The law is well established that only the value-in-exchange, or fair market value is relevant in tax assessment cases. The Pennsylvania Supreme Court has defined market value as "the price

value. On cross-examination, Ellis testified that, in his opinion, the highest and best use of the property was a heavy assembly operation by a single user "similar to PDM." He did not indicate that he based his opinion of value solely on the value of the property to PDM; in fact, the record contains no mention of this impermissible technique before PDM's attorney discussed it in his closing argument. Therefore, we conclude that the evidence does not support PDM's contention that Ellis employed the value-in-use method.

### 3. Evidentiary Rulings

PDM next contends that the trial court abused its discretion by precluding part of the testimony of each of two of PDM's witnesses. The trial court refused to allow Mr. Davis, the PDM plant manager who is a civil engineer, to offer any expert opinion and blocked opinion testimony from Mr. McCaffrey, both in PDM's case in chief and on rebuttal, because PDM had not given the taxing authorities Mr. Davis' name nor any report from either witness.

The pertinent portion of the pre-trial order of Administrative Judge PAPADAKOS was as follows:

(3) On or before June 1, 1982, the parties shall serve upon each other a written statement containing the following:

a. The names and addresses of all persons who may be called as witnesses and a short characterization of the nature of their testimony.

---

which a purchaser, willing but not obliged to buy, would pay an owner, willing but obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Buhl Foundation v. Board of Property Assessment, Appeals and Review,* 407 Pa. 567, 570, 180 A.2d 900, 902 (1962), quoting *Brooks Building Tax Assessment* case, 391 Pa. 94, 97, 137 A.2d 273, 274 (1958).

b. The reports of any expert whose opinion may be offered in evidence at the time of trial. Such reports shall include the findings and conclusions of the expert.

Pursuant to that order and Allegheny County Local Rule 212, which provides that a witness whose report has not been furnished "will not, under any circumstances whatsoever, be permitted to testify," the trial judge barred Davis and McCaffrey from testifying.

Our Pennsylvania Superior Court has understandably developed substantial special experience with respect to pre-trial orders in general and Allegheny County Local Rule 212 in particular. However, the Superior Court decisions on Rule 212, which both sides here have cited, are somewhat difficult to reconcile. In *Bell v. Western Pennsylvania Hospital*, 293 Pa. Superior Ct. 37, 437 A.2d 978 (1981) and in *Sindler v. Goldman*, Pa. Superior Ct. , 454 A.2d 1054 (1982), the Superior Court viewed Allegheny County Local Rule 212 as mandatory and affirmed the rejection of witnesses by the trial court. In *Nowosielski v. Kryzosiak*, 280 Pa. Superior Ct. 243, 421 A.2d 703 (1980) and in the recent case of *Giacco v. Pampena*, Pa. Superior Ct. , 465 A.2d 3 (1983), the Superior Court panels treated Allegheny County Local Rule 212 as discretionary; the trial judges had allowed experts to testify, and the Superior Court also affirmed those rulings.

In *Gill v. McGraw Electric Co.*, 264 Pa. Superior Ct. 368, 399 A.2d 1095 (1979), not involving Allegheny County or its Rule 212 but involving a pre-trial order, the Superior Court accorded discretion to the trial court, but in that case reversed a trial judge's ruling which had allowed an expert to testify, applying several criteria which, the Superior Court stated, should be considered in determining whether or not to allow

expert testimony where there has been a violation of a pre-trial order. Among the criteria is the validity of the excuse offered by the errant party and the ability of the party's opponent to have discovered the witness and the substance of the witness's opinion before trial.[6]

In this case, PDM offered no explanation for its violation of the court order, arguing instead that the order required the exchange of reports only if the expert prepared one.[7] A literal reading of the pre-trial order indicates that it mandated an exchange of reports on the part of all experts. The order, quoted above, required that there be "a written statement containing" the reports of any expert, and the order stated that the reports "shall include the findings and conclusions of the expert." Obviously, every expert witness does have an opinion, and the findings and conclusions embodied in that opinion therefore were mandated to be in the report to be contained in the written statement.

After issuing its pre-trial order, the trial court met with the parties and, if any confusion existed, the parties could have requested clarification at that time. There is no indication that the taxing authorities had the opportunity to discover Davis's identity or either

---

[6] See also *Royster v. McGowen Ford, Inc.*, 294 Pa. Superior Ct. 160, 439 A.2d 799 (1982), involving a Philadelphia pre-trial order, where the Superior Court also reversed the trial court ruling, viewing it as having been too stringent in light of the *Gill* criteria.

[7] PDM also argued that Davis was not an expert witness, but only a witness as to facts. The trial court permitted Davis to testify to factual issues; it prohibited only that portion of Davis' testimony which would have included expert opinion. Similarly, PDM argued that McCaffrey was not an expert witness; however, his testimony would have concerned his opinion of the value and marketability of other industrial cites in the Pittsburgh area. We find no abuse of the trial court's discretion in its determination that these witnesses were offering expert testimony.

witness's opinion before the trial. Because the pre-trial order called for advance information as to "any expert," it was not confined to expert testimony on valuation but also covered other expert testimony, such as that sought from Mr. Davis.

In view of the very strong language of Allegheny County Local Rule 212, prohibiting an expert from testifying "under any circumstances whatsoever" when a report has not been furnished, we incline toward the line of Pennsylvania Superior Court panel opinions which treat that rule as mandatory. In any event, we observe that the consistent approach of the Superior Court has been to affirm the action of the trial judge in most cases. The view of this Court also has been that we should defer to the judgment of the trial judge in determining the admissibility of expert testimony,[8] and we perceive no abuse of the trial judge's power in his interpretation and application of Rule 212 and his own pre-trial order here.

PDM's next argument is that the trial court impermissibly restricted both the cross-examination of the taxing authorities' expert, Ellis, and the rebuttal testimony of its own expert, Coyle. During cross-examination, PDM attempted to impeach Ellis by questioning him about his testimony in a different, unrelated case. The trial court sustained the taxing authorities' objections to those questions as irrelevant and raising a collateral matter.

The law is well established that the authority to limit the scope and extent of cross-examination is within the sound discretion of the trial court.[9] Al-

---

[8] *Bonin Reassessment Appeal*, 65 Pa. Commonwealth Ct. 278, 442 A.2d 43 (1982).

[9] *Sto-Rox Focus on Renewal Neighborhood Corp. v. King*, 40 Pa. Commonwealth Ct. 640, 398 A.2d 241 (1979) ; *First National Bank of Pike County v. Department of Banking*, 7 Pa. Commonwealth Ct. 603, 300 A.2d 823 (1973).

though a party may impeach a witness by reference to a prior inconsistent statement, we cannot say that by refusing to allow PDM to introduce evidence about Ellis' testimony in an unrelated case, the trial court imposed unreasonable limitations on cross-examination.

With respect to the trial court's limitation of Coyle's rebuttal testimony, we note that, as with cross-examination, the "admission of rebuttal evidence is normally within the discretion of the trial judge."[10] PDM attempted to rebut, through Coyle, that portion of Ellis' testimony concerning the necessity for upward adjustments of certain figures because of the passing of time.

A trial court may properly exclude rebuttal if the matter was something which the offering party could have presented during its case in chief.[11] Because Ellis' report, which PDM had before trial, contained references to his upward adjustment, we find no error in Administrative Judge PAPADAKOS' ruling that Coyle's testimony was not proper rebuttal.

## 4. Increased Assessment

PDM contends, finally, that because the taxing authorities did not file a cross-appeal, the trial court was without authority to increase the level of assessment set by the board. Although it is true that the taxing authorities did not file an appeal from the board's action, they did file petitions to intervene, and each of those requested the "restoration" of the assessment to a proper level. Furthermore, because tax appeals are de novo, the trial court must determine the fair

---

[10] *Mishkin v. Lancaster Redevelopment Authority*, 6 Pa. Commonwealth Ct. 97, 101, 293 A.2d 135, 137 (1972).

[11] *Flowers v. Green*, 420 Pa. 481, 218 A.2d 219 (1966) ; *Mishkin v. Lancaster Redevelopment Authority*, 6 Pa. Commonwealth Ct. 97, 293 A.2d 135 (1972).

market value of the property. The cases have clearly established that the trial court has the authority to find, as did the trial court here, that the fair market value lies somewhere between the valuations estimated by the parties' experts.[12]

Accordingly, we affirm.

### ORDER

Now, October 17, 1983, the orders of the Court of Common Pleas of Allegheny County dated July 15, 1982, and October 26, 1982, are affirmed.

---

[12] *Appeal of The Township of South Whitehall*, 38 Pa. Commonwealth Ct. 561, 394 A.2d 653 (1978). The relevant figures are:

|  | Fair Market Value | Assessment at 25 % |
|---|---|---|
| Original Assessment | $ 9,160,220 | $2,290,055 |
| Board of Assessment Appeals | 6,800,000 | 1,700,000 |
| Coyle | 3,300,000 | 825,000 |
| Ellis | 10,000,000 | 2,500,000 |
| Findings of Court | 7,700,000 | 1,925,000 |