Stafford
No. 84-117

ROLLSWORTH TRI–CITY TRUST

v.

CITY OF SOMERSWORTH

April 5, 1985

*Wiggin & Nourie,* of Manchester (*W. Wright Danenbarger* and *Edward L. Cross, Jr.,* on the brief, and *Mr. Cross* orally), for the plaintiff.

*Shaheen, Cappiello, Stein & Gordon P.A.,* of Dover (*Daniel M. Cappiello* and *Dorothy M. Bickford* on the brief, and *Ms. Bickford* orally), for the defendant.

BATCHELDER, J.   We are asked to determine whether the master properly selected and applied the capitalization of income method in his valuation of the plaintiff's property in a tax abatement appeal. We affirm in part and reverse in part.

The property consists of 36.72 acres zoned for business use in Somersworth. An apartment complex occupies 14.7 acres; the remaining land is undeveloped. The plaintiff, Rollsworth Tri-City Trust, purchased the property for $3,964,000 in 1978.

The defendant, the City of Somersworth, assessed the property's value at $2,544,750 for each of the tax years 1980 and 1981, resulting in tax levies of $169,480.35 and $191,874.15 for 1980 and 1981, respectively, computed at respective tax rates of $66.60 and $75.40 per $1,000 of assessed value. The plaintiff paid these taxes under protest and applied for abatements under RSA 76:16. When the abatements were denied, the plaintiff petitioned the superior court under RSA 76:17 for a redetermination of its tax liability for both years, alleging that the levies were disproportionately high. The parties stipulated that the applicable equalization ratios employed

by the city for 1980 and 1981 were 41% and 38%, respectively. The only issue in dispute, therefore, was whether the defendant's valuation of the property was excessive.

Using the capitalization of income approach, the Master (*Mayland H. Morse, Jr.*, Esq.) determined that the correct assessed valuation of the property had been $1,302,596.53 in 1980 and $1,437,624.94 in 1981. He accordingly recommended tax abatements in the amounts of $82,727.42 and $83,477.23. The Superior Court (*Temple*, J.) approved the recommendations and ordered the abatements.

The defendant first contends that the master erred in relying exclusively on the capitalization of income method to determine the property's value. To support this position, the defendant makes three arguments: (1) the master failed to make an evidentiary finding that other valuation techniques were unreliable and therefore erred in not considering such techniques; (2) the income approach was legally inadequate because it failed to account for tax considerations that could have affected the property's marketability; and (3) the income approach was legally inadequate because only a portion of the property produced income. These arguments are without merit.

In ruling on the defendant's requested findings of fact, the master found that the cost approach, the income approach, and the market approach are the "generally accepted methods by which an appraiser arrives at an estimate of value." He found, however, that the market approach was inadequate because "no comparables were proven to provide any reliable basis for the use of this method," and he rejected the cost approach as computed by the defendant as "not . . . reliably applicable." In his report, the master took notice of the fact that both the plaintiff's expert and the defendant's expert testified that the income approach was the most reliable method in this case.

The income capitalization approach measures the present value of property on the basis of the future net income the property could produce for the owner. The net income is the rent the property would generate on an open market, less the normal and usual costs of operation. This figure is then capitalized to determine present worth.

■■■ "In abatement petitions, the trial court is empowered to make a determination of the subject property's market value, . . . and all evidence before the court relating to valuation should be considered . . . . However, the court is not foreclosed from choosing a particular method to the exclusion of others." *Brickman v. City of Manchester*, 119 N.H. 919, 920, 409 A.2d 1328, 1329–30 (1979) (cita-

tions omitted). This property was developed and held for the purpose of generating income for investor-owners. We find that the income approach was an appropriate method of valuation in this case and that the master's selection of this method was proper and rested on an adequate evidentiary basis.

■ ■ "[W]orth to the owner alone is not the appropriate standard for taxation." *590 Realty Co., Ltd v. City of Keene*, 122 N.H. 284, 286, 444 A.2d 535, 536 (1982). "It is obvious that whatever income tax benefits a taxpayer may derive from his ownership of real estate will depend upon facts peculiar to him such as his income tax bracket for the particular year, the method of depreciation used and the current and unpredictable future provisions of the Federal income tax laws." *Fort Lee v. Hudson Terrace Apts.*, 175 N.J. Super. 221, 226, 417 A.2d 1124, 1126 (1980). We therefore reject the defendant's claim that the income approach is legally inadequate because it fails to account for tax considerations that might affect property marketability.

■ The income capitalization approach determines value by measuring a property's worth on the basis of its capacity to generate future rental income. Although use of this approach might indeed be inappropriate where anticipated income is insignificant relative to the magnitude of the property, we do not find this to be the case here. We therefore reject the defendant's argument that the master's reliance on this approach constituted error due to the presence of unproductive land.

The defendant next contends that even if the master correctly selected the income approach as his valuation method, the master erred in his application of this approach. The defendant argues that the master erred in four ways: (1) he improperly found that the actual rents generated by the apartment complex constituted market rents for the property; (2) he incorrectly calculated the value of the actual rents; (3) he incorrectly treated the replacement of a septic system and certain other costs as operating expenses, instead of capital costs; and (4) he failed to state either his rationale for, or the evidentiary basis of, his finding that the proper capitalization rate was 17%. We consider these arguments in turn.

■ The master found:

"There was no persuasive evidence to suggest that the property was not well managed nor that the rentals actually charged and received by the plaintiff in 1980 and in 1981 which make up the net revenues or gross income

and give rise to the properties' profitability from actual revenues were not consistent with or well based upon fair market conditions that prevailed in the Somersworth area for rental housing of this type and quality with the actual amenities provided."

The manager of the apartment complex testified that every spring the plaintiff evaluated the rents charged by competitive properties and adjusted its own rents to be slightly higher than those of the competition. In light of this and other evidence, we find that the master's ruling that the actual rents of the property were equivalent to market rents was proper.

We find, however, that the master incorrectly calculated the value of the actual rents for the 1980 tax year. In determining the actual rents of the properties, the master accepted the computations presented by the plaintiff's expert. The expert calculated gross rental income for the tax year beginning April 1980 on the basis of the rental income received in March 1980. The 1981 figure was similarly derived from the rents received in March 1981.

■ This method did not reach results that accurately reflected the income received in the 1980 tax year. The manager of the apartment complex testified to the rent a new tenant would have been charged in April of each of the two tax years. The April 1980 figures were higher than the actual March 1980 rents from which the 1980 total income figure was derived, indicating that the 1980 market rent was higher than the contract rent charged in March 1980. The April 1981 figures were substantially the same as the actual rents charged in March 1981, indicating that these rents were reliable. Accordingly, on remand, the 1980 income total should be adjusted to be consistent with the April 1980 figure.

■ The defendant next contends that the master improperly treated the replacement of a septic system and certain other ordinarily capitalized costs as operating expenses. The apartment complex manager testified that there were nine septic systems, that each one had an average life span of ten to eleven years, and that the plaintiff anticipated replacing a system on the average of one a year. The manager also testified that the replacement of other fixtures would be staggered so that approximately the same replacement costs would be incurred every year. In light of this testimony, we conclude that the master's treatment of the disputed expenses as operating costs was not an abuse of his discretion.

Finally, the defendant contends that the master's selection of a 17% capitalization rate must be reversed because it is not supported

by the evidence and because the master failed to identify the manner in which he arrived at this figure. We disagree.

The plaintiff's expert testified that he calculated the capitalization rate on the basis of the financing terms a purchaser of the property would likely accept and that he calculated the rate to be 17.73% in 1980 and 17.86% in 1981. The defendant's expert offered two methods of calculation. Under the first method, the expert arrived at a 14.5% rate on the basis of published figures. On cross-examination, however, he testified that his calculations were in error and that under this approach 15.3% was the correct rate. Under the second method, the expert arrived at a 13.5% rate on the basis of the actual financing terms of the plaintiff's 1978 purchase of the property. On cross-examination, he testified that under this approach the rate would be 16.6% if the mortgage on the property was unassumable. The apartment complex manager testified that, although the mortgage might be legally assumable, the relationship between the mortgagor and the mortgagee effectively precluded a future assumption.

In his report, the master found that 15.3% and 16.6% were the correct results under the defendant's methods of calculation. Since the evidence can reasonably be construed to support these findings, we find no error in this respect.

The master's report states: "In a reconciliation of the numerous differences between the experts, the master finds that a 17% capitalization rate should be applied . . . ." The master apparently arrived at this figure by roughly splitting the difference between the 17.6% rate advanced by the plaintiff and the 15.3% and 16.6% rates of the defendant. We find no error in this approach. As the Minnesota Supreme Court stated in *Halla v. County of Hennepin*, 306 Minn. 533, 534, 237 N.W.2d 348, 349–50 (1975):

"With respect to the reasonableness of the trial court's valuation, it is apparent that . . . the trial court, confronted with conflicting appraisals of the assessor and the owners, neither of which was acceptable, concluded that a compromise in valuation was required by the evidence. We are persuaded that this compromise in valuation has evidentiary support and is not unreasonable or clearly erroneous."

"Our review of the master's findings is limited to whether he erred as a matter of law or abused his discretion." *Dobson v. Staples*, 123 N.H. 102, 103, 456 A.2d 972, 972 (1983). We find that,

under this standard, the master's calculation of the actual rents for 1980 was his only error.

> *Affirmed in part; reversed in part; remanded.*

All concurred.