573 A.2d 248

McGRAW–EDISON COMPANY c/o Cooper Power
Systems, Inc., Appellant,

v.

WASHINGTON COUNTY BOARD OF ASSESSMENT
APPEALS, Appellee.

CANON–McMILLEN SCHOOL DISTRICT

v.

McGRAW–EDISON COMPANY c/o Cooper Industries, Inc.
and Board of Assessment Appeals of Washington County.

Appeal of McGRAW–EDISON COMPANY c/o Cooper Power
Systems, Inc., Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1990.

Decided April 2, 1990.

438

Gregory G. Lotz, with him, John E. Garippa, Garippa & Treven, Montclair, N.J., for appellant.

Melvin B. Bassi, Bassi & Associates, Charleroi, for appellee, Washington County Bd. of Assessment Appeals.

Templeton Smith, Jr., with him, Richard DiSalle, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, for appellee, Canon–McMillan School Dist.

Frank C. Roney, Jr., Canonsburg, for appellee, Borough of Canonsburg.

Before CRAIG and PALLADINO, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

McGraw–Edison Co. has appealed from an order of the Court of Common Pleas of Washington County setting the fair market value of its property for real estate tax assessment purposes at $8,787,408 for the tax years 1987 and 1988. We affirm.

McGraw–Edison owns an 89.944–acre tract of land in the Borough of Canonsburg and the Township of North Strabane, Washington County. The manufacturing facility erected thereon consists of 1,255,344 square feet. McGraw–Edison appealed its 1987 tax assessment, setting the value of the property at $8,825,257. Following a hearing, the Washington County Board of Assessment Appeals left the assessment unchanged. McGraw–Edison's, the Borough of Canonsburg's and the Canon–McMillan School District's appeals were consolidated before the trial court.

At the *de novo* hearing in common pleas court, the parties stipulated to the acreage and square footage of the facility and the applicable common level ratios (26.3% for 1987 and 25.3% for 1988). In addition, they agreed that the market value for the two tax years in question, 1987 and 1988, would be the same. Finally, they stipulated to the qualifications of the experts, Mr. Lerario on behalf of McGraw–Edison and Mr. Lignelli on behalf of the taxing authorities.

Both experts agreed that the method of valuation best suited to the McGraw–Edison property was the market

data/comparable sales approach. Mr. Lerario discussed the sales of seven properties he considered comparable. The price per square foot of these sales varied from $.94 to $6.78. Based upon this information, Mr. Lerario concluded that the market value of McGraw–Edison's property was $4 per square foot, or $5,000,000. Mr. Lignelli also offered examples of comparable sales, four within Pennsylvania and nine outside the state, with price ranges of $7.80 to $12.39 per square foot. He concluded that the McGraw–Edison property was worth $8.50 per square foot, or $10,558,000. Based upon this testimony, the court determined the fair market value of the property to be $8,787,408, or $7.00 per square foot.

On appeal, McGraw–Edison raises three issues for our consideration: 1) whether the trial court erred in allowing into evidence nine of Mr. Lignelli's comparables, which were for properties outside Pennsylvania; 2) whether Mr. Lignelli utilized an impermissible approach to valuation; and 3) whether the court erred in considering the valuation established by a prior settlement for the three preceding tax years. We shall address these issues in the order raised, cognizant of our limited scope of review in a property assessment appeal: the trial court's findings must be given great force and will not be disturbed absent clear error. *Appeal of Chartiers Valley School District*, 67 Pa.Commonwealth Ct. 121, 447 A.2d 317 (1982), *appeal dismissed*, 500 Pa. 341, 456 A.2d 986 (1983).

McGraw–Edison's first argument, that the trial court erred in admitting into evidence nine of the thirteen comparable sales Mr. Lignelli used in his valuation, is broken into several facets. Initially, we must point out that a thorough review of the record reveals that McGraw–Edison did not object to Mr. Lignelli's testimony and never requested the court to refuse to admit evidence of the out-of-state comparables. It has therefore waived any objection to the admission of the evidence of which it complains. *See* Pa.R.A.P. 302(a).

The real thrust of McGraw–Edison's argument, however, is that the trial court erred in giving weight to this testimony. It first contends that Mr. Lignelli's testimony with respect to the nine out-of-state comparables must be disregarded because he lacked a factual basis for his opinions in that he was unfamiliar with the specific demographics of the nine regions from which he obtained his comparable sales data. For this proposition, McGraw–Edison cites *Collins v. Hand*, 431 Pa. 378, 246 A.2d 398 (1968). While *Collins* does reiterate the oft-repeated principle that an expert may not base his opinions upon facts not of record, we believe that McGraw–Edison's reading of the case is too broad.

For each of the nine sales, Mr. Lignelli offered testimony regarding the acreage of the land, square footage, age and condition of the buildings, and the identity of buyer and seller. He stated whether he believed the property to be inferior or superior to McGraw–Edison's, and precisely why. Although he could not answer questions on cross-examination regarding local demographics, taxation, unemployment rates, etc., he did state that the types of plants he was focusing on are typically bought to service regions rather than the local communities in which they are located. Thus, while Mr. Lignelli was not aware of all of the factual circumstances of each sale within the context of the local economical factors, that fact would relate to the persuasive value of the testimony, as McGraw–Edison admits in its brief, and not to its admissibility.

We have acknowledged in the past that the valuation of property is not an exact science and that it is the fact finder's role to determine the weight to be accorded an expert's testimony in this area. *B.P. Oil Co., Inc. v. Delaware County Board of Assessment Appeals*, 114 Pa. Commonwealth Ct. 549, 539 A.2d 473 (1988). We can discern no error here, particularly since McGraw–Edison did not object at trial to the admission of this testimony for lack of a factual basis.

McGraw–Edison, in its brief, has aptly summarized the definition of a "comparable" sale for purposes of computing the market value of a specific property. It cites *McKnight Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 234, 241, 209 A.2d 389, 393 (1965), and sets forth the following excerpt from that case:

'[C]omparables' means properties of a similar nature which have been recently sold. In order to be comparable in this latter sense, however, the properties need not be identical.... In reviewing sales of other properties, 'to compare' means to examine the characters or qualities of one or more properties for the purpose of discovering their resemblances or differences. The aim is to show relative values by bringing out characteristic qualities, whether similar or divergent. Thus, comparisons based on sales may be made according to location, age and condition of improvements, income and expense, use, size, type of construction and in numerous other ways.

In this case, both experts offered evidence of sales they considered to be comparable and offered information concerning the various factors enumerated in *McKnight*. It was the court's obligation to evaluate this evidence and to weigh the many competing factors in arriving at a market value for the McGraw–Edison property. Although McGraw–Edison asserts that the nine out-of-state comparables Mr. Lignelli used did not fit the definition, we must disagree.

Without precisely arguing that these nine sales were too remote in time to be relevant, McGraw–Edison cites *Pittsburgh Des Moines Steel Co. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 103 Pa.Commonwealth Ct. 61, 519 A.2d 1080 (1987) (*Pittsburgh Des Moines Steel*), for the proposition that a trial court may exclude evidence of comparable sales if it deems them to be too remote in time to be of probative value. The key distinction is that the proffered testimony was objected to in *Pittsburgh Des Moines Steel*. Here, McGraw–Edison did not move to exclude any portion of Mr. Lignelli's testimony

because of the remoteness of his comparable sales data.[1] Further, the question of remoteness generally goes to the weight of the evidence, *Gottus v. Allegheny County Redevelopment Authority*, 425 Pa. 584, 229 A.2d 869 (1967), a matter committed to the trial court's discretion.

Throughout this first argument, McGraw–Edison appears to be arguing that out-of-state sales are not comparable *per se*. Not surprisingly, it has cited no authority for this proposition. For example, McGraw–Edison argues that, if the court had focused upon the four comparables from Pennsylvania cited by Mr. Lignelli, it would have found a price range closer to Mr. Lerario's.[2] We have held above, however, that the trial court, as fact finder, did not err in examining the full range of comparables.

Finally, McGraw–Edison argues that the comparable sales presented by its expert were, in effect, more comparable to its property since all were located within Pennsylvania and were sales of older, large industrial facilities. This contention, once again, goes to the weight of the evidence and we must reiterate that the trial court has broad discretion in determining which factors are dispositive. The trial judge stated in his opinion that he considered both parties' comparable sales in arriving at his ultimate conclusion, although he recognized potential problems with the out-of-state sales and viewed them "critically." Trial court opinion at 6.

1. The range of sale dates for Mr. Lignelli's fourteen comparables was from 1979 to 1987, eight of them occurring in or after 1983. By contrast, Mr. Lerario's seven comparables had sale dates between 1983 and 1987.

2. This argument is based upon a collateral issue which we need not resolve. McGraw–Edison has argued that Mr. Lignelli used incorrect sales prices for two of his comparable sales in Pennsylvania, thereby decreasing the range of prices per square foot and lowering the overall average. Having concluded that the trial court was entitled to consider the out-of-state comparables, this argument becomes irrelevant. Further, although we have affirmed the proposition that it is within a trial court's fact-finding powers to arrive at a fair market value by choosing a value which falls between the valuations offered by the experts, *see B.P. Oil*, we can find no authority to support the proposition that the fact finder is bound by mathematical averages in determining market value.

■  We now turn to the second issue raised by McGraw–Edison, that Mr. Lignelli used the impermissible "value-in-use" approach to valuation.  In *Pittsburgh–Des Moines Steel Co., Inc. v. McLaughlin,* 77 Pa.Commonwealth Ct. 565, 466 A.2d 1092 (1983) (*McLaughlin* ), we recognized that the value-in-use method is based upon the value of the property. to the current user, which is improper because such a method may well result in a value higher than that available in the marketplace.  It is well settled that only the value-in-exchange, or fair market value concept,[3] is relevant in tax assessment cases.  *Id.*

■  Mr. Lignelli testified that he utilized a "continued use" approach to valuation.  He explained that he considered the highest and best use of the subject property to be its continued use by a single manufacturer, that is, someone who would use it in either the same or similar capacity as McGraw–Edison.[4]  On cross-examination, Mr. Lignelli testified that he understood the difference between the value-in-use and value-in-exchange concepts and that he had used the latter in his appraisal.  As was the case in *McLaughlin,* where the expert did not base his opinion of value solely upon its value to the current user, we must conclude that the evidence does not support McGraw–Edison's contention that Mr. Lignelli employed the value-in-use method.

■  The final argument advanced by McGraw–Edison is that the trial court judge erred in referring to a prior settlement in his opinion, relying on the following statement

3.  The Pennsylvania Supreme Court, in *Buhl Foundation v. Board of Property Assessment, Appeals and Review,* 407 Pa. 567, 570, 180 A.2d 900, 902 (1962), defined market value as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied."

4.  We note that McGraw–Edison's expert, Mr. Lerario, agreed on cross-examination that the highest and best use of the property would be its continuing industrial utilization by a single tenant or user, as a manufacturing or warehouse facility.

from this Court's opinion in *Pittsburgh Des Moines Steel*, 103 Pa.Commonwealth Ct. at 64–65, 519 A.2d at 1082 (1987):

> In *Reick Ice Cream Co. Appeal*, 417 Pa. 249, 209 A.2d 383 (1965), our Supreme Court considered the relevancy of a former adjudication of the fair market value of the subject property, and its effect on the real estate assessor and the trial court. The court concluded that a real estate assessment for taxation purposes for one year is not res judicata, nor has it any probative value on the issue of the property's fair market value for assessment purposes for a succeeding year or later year.

We have carefully reviewed the trial court's opinion and are convinced that that court relied upon the competent testimony of the experts in rendering its determination of market value. The only reference to the prior settlement appears on page 249 of the court's opinion, during its discussion of the procedural history of the case. Thereafter, the court discussed the proper methods for determining value,[5] and acknowledged that a comprehensive analysis of the comparable sales in this case was necessary. For example, the trial court judge wrote:

> The court must consider the evidence presented by the parties to ascertain actual value of the subject property. Actual value is ascertained through determining market value.... No one sale presented by the parties will herein control a market data approach value determination. The actual value determination, however, requires a comparison between the sale of other properties and the subject property that is comprehensive in nature. The court must consider a multitude of factors in this comparison, and these factors include property size, property location, improvements, quality of improvements (such as age and construction of buildings) and other wide-ranging

---

5. "The court must itself consider each valuation method to establish actual value. Upon careful consideration of each method, based in part upon the testimony of Mr. Lerario and Mr. Lignelli, the court's valuation was based upon the market data/comparable sales approach." Trial court opinion at 4.

factors. *Deitch v. Board of Assessors*, 417 Pa. 213, 209 A.2d 397 (1965).

Trial court opinion at 5–6 (footnote omitted).

McGraw–Edison admits that the weight or consideration the trial court placed on the prior settlement cannot be determined. On the basis of the foregoing excerpts, which clearly summarize the factors the court, in fact, considered, we must conclude that any error on the trial judge's part in referring to the prior settlement was harmless.

For all of the foregoing reasons, we affirm the order of the Court of Common Pleas of Washington County.

### ORDER

AND NOW, this 2nd day of April, 1990, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby affirmed.