## IBM CREDIT CORP.

v.

## CITY OF BATH.

Supreme Judicial Court of Maine.

Argued May 1, 1995.
Decided Sept. 21, 1995.

Michael L. Sheehan (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for plaintiff.

Roger R. Therriault (orally), Bath, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

IBM Credit Corp. appeals from the judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) affirming the decision of the State Board of Property Tax Review determining the just value for tax purposes of certain mainframe computer equipment owned by IBM. IBM contends that because the Board erroneously did not utilize the fair market value of the equipment to determine its just value, the trial court erred in affirming the Board's decision. We affirm the judgment.

The record reflects the following pertinent facts: IBM acquired the computer equipment in 1989 at a cost of $5,113,454 and simultaneously leased it to Bath Iron Works for a 36–month period at $143,872 a month. Thereafter, the equipment was leased to Deluxe Check Printers for 36–month period at $17,000 a month. The City Assessor valued the equipment at $3,694,500 for 1991 and $3,235,620 for 1992. Pursuant to 36 M.R.S.A. § 841 (1990 & Supp.1994), IBM applied to the assessor for the City of Bath for an abatement of the taxes assessed on the computer equipment for the years 1991 and

1992. It requested that the assessed value be reduced to $1,797,240 for the year 1991 and to $801,890 for the year 1992.

Following the assessor's denials of the applications, IBM applied to the City's Board of Assessment Review, pursuant to 36 M.R.S.A. § 843 (1990 & Supp.1994). Following its denials, IBM filed appeals to the Board that were consolidated for hearing. By its appeals, IBM contended that the City Assessor had substantially overvalued the equipment by failing to consider its economic and functional obsolescence and its market value. In support of its contention, IBM presented the testimony of Robert Henry, its marketing advisor, and Dale Taylor, the owner and publisher of "Computer Price Watch," a monthly publication giving the current wholesale and retail prices of computers and representative lease rates for certain terms. Henry opined that the equipment had lost approximately 90 percent of its value within the first three years of its purchase; that at the beginning of the lease to Deluxe Check Printers in October, 1992, the equipment had a value of approximately $560,000; and that the equipment would be worthless at the end of that lease period. Taylor testified that he analyzed information received in the course of a month from 50 to 60 dealers in computer hardware to determine that the information published in "Computer Price Watch" reflected the market and that he did not include price information during the months for which he had insufficient information to form a conclusion with which he was comfortable. He opined that in April, 1991 the equipment had a market value of $1,845,000 and $850,000 in April, 1992. He affirmed Henry's opinion that at the termination of the lease to Deluxe Check Printers the equipment would be valueless. Michael Austin, the City Assessor, testified that, as was done with all personal property in the City, he valued the equipment by depreciating the original cost at five percent a year.

After a hearing, the Board determined that IBM had met its burden of proving that the equipment had been substantially overvalued. The Board found that the IBM equipment was not susceptible to the same method of assessment used for other types of personal property in the City of Bath because it depreciated at a faster rate, and accordingly, the five percent per year depreciation was inappropriate. It rejected IBM's suggested rate of depreciation of more than 50 percent the first two years as not recognizing the residual value of the equipment. From the Board's decision concluding that the just value of the equipment was the original cost depreciated by 20 percent a year and directing the City to reimburse IBM with interest from the date of overpayment, IBM sought review by the Superior Court pursuant to the provisions of 36 M.R.S.A. § 271(7) (1990) and 5 M.R.S.A. §§ 11001–11008 (1989). After a hearing, a judgment was entered affirming the decision of the Board, and IBM appeals.

■ When, as here, the Superior Court acts in its appellate capacity, we review directly the decision of the Board for abuse of its discretion, error of law or findings unsupported by substantial evidence in the record. *Town of Vienna v. Kokernak,* 612 A.2d 870, 872 (Me.1992); *see also* 5 M.R.S.A. § 11007 (1989) (setting forth the manner and scope of judicial review).

IBM contends that because the Board's adoption of cost less depreciation as a methodology for determining the just value of the equipment was arbitrary, capricious and an abuse of its discretion and was not supported by substantial evidence on the whole record, its decision must be vacated. It argues that the just value of the equipment should have been determined by adopting its evidence as to the fair market value of the equipment. We disagree.

■ An assessment is presumed valid, and the taxpayer has the burden to prove it "manifestly wrong." *City of Waterville v. Waterville Homes, Inc.,* 655 A.2d 365, 366–67 (Me.1995). The Maine Constitution requires that property be assessed for purposes of taxation "equally according the just value thereof." Me. Const. art. IX, § 8. In general, "local assessors have considerable leeway in choosing the method or combinations of methods to achieve just valuations." *Central Maine Power Co. v. Town of Moscow,* 649 A.2d 320, 324 (Me.1994) (citations omitted). "Although the Legislature has established

'minimum assessing standards' with which the assessors must comply, 36 M.R.S.A. § 327, it has stopped short of setting forth in the statutes the different methods which local assessors may utilize to achieve such results." *Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 389–90 (Me.1981). *See also* 36 M.R.S.A. § 326 (1990) ("The purpose of minimum standards is to aid the municipalities of Maine in the realization of just assessing practices without mandating the different ways municipalities might choose to achieve such equitable assessments.").

■ Here, in determining the value of the equipment, the Board used the cost less depreciation method. We have previously noted that "[d]epreciation, like the market value of property cannot be proved with mathematical certainty and must ultimately remain in the realm of opinion, estimate and judgment." *Shawmut Inn,* 428 A.2d at 394. The evidence before the Board revealed that computer equipment depreciated at a faster rate than other personal property because the technology of existing computers is being superseded by continuing advances in computer technology. As a result, IBM's computer equipment has a low resale value. Notwithstanding the low resale value, the record reveals that IBM's computer equipment was being leased during the years at issue for approximately $143,000 per month. The Board accepted IBM's contention that a straight line depreciation of five percent per year did not adequately reflect the sharp decline in the resale value of the computers. Its rejection of IBM's suggested rate of depreciation of 50 percent over the first two years following its purchase was based on IBM's failure to account for the income being generated by the leasing of the equipment. The Board properly considered both of these factors in settling on a depreciation of 20 percent over a period of five years to determine the just value of the equipment for tax assessment purposes. To require that the only methodology that could be used to arrive at a just value of the property is the comparable sales in 1991 and 1992, is to ignore the reality of the substantial income IBM was concurrently deriving from the leasing of the property. Our review of the whole record discloses that the Board's decision is supported by substantial evidence. IBM has failed to establish that the Board's methodology for determining the just value of the equipment was erroneous as a matter of law or that its assessed value as determined by the Board was "so unreasonable as to violate the constitutional mandate of justness and equality." *Shawmut Inn,* 428 A.2d at 395.

The entry is:

Judgment affirmed.

ROBERTS, CLIFFORD and DANA, JJ., concurring.

LIPEZ, Justice, with whom RUDMAN, Justice, joins, dissenting.

Because I believe that the Board improperly considered "value in use" in its determination of the just value of the computer equipment on April 1, 1991 and April 1, 1992, I respectfully dissent. The Constitution of the State of Maine requires that:

All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof.

Me. Const. art. IX, § 8; *see also* 36 M.R.S.A. § 201 (1990). It is well-established under Maine law that "just value" is synonymous with true or market value. *Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 389 (Me.1981); *Frank v. Assessors of Skowhegan,* 329 A.2d 167, 173 (Me.1974); *Kittery Elec. Light Co. v. Assessors of Town of Kittery,* 219 A.2d 728, 734 (Me.1966); *Sweet, Inc. v. City of Auburn,* 134 Me. 28, 31, 180 A. 803, 804 (1935). "Market value" is that price a willing buyer would pay a similarly willing seller at a fair public sale. *Frank,* 329 A.2d at 173. The relevant marketplace must be one in which normal conditions exist. *Id.*

As the assessor for the City conceded, the concept of market value is distinct from that of value-in-use. Value-in-use is based on the value of property to its current user, which may result in a value higher than that established by the marketplace. *McGraw–Edison Co. v. Washington Cty.,* 132 Pa.Cmwlth. 437, 573 A.2d 248, 251 (1990). Several courts

have rejected the value-in-use concept as unreflective of the market value on which an assessment must be based. *Noble v. IBM Credit Corp.*, Nos. 40738–40739, 1993 WL 557199, 1993 Wash.Tax LEXIS 582 (June 10, 1993); *McGraw–Edison*, 573 A.2d at 251; *Pittsburgh–Des Moines Steel v. McLaughlin*, 77 Pa.Cmwlth. 565, 466 A.2d 1092, 1095 n. 5 (1983); *Rollsworth Tri–City Trust v. Somersworth*, 126 N.H. 333, 493 A.2d 462, 464 (1985) ("[W]orth to the owner alone is not the appropriate standard for taxation."). "It is well-settled that only the value-in-exchange, or fair market value concept, is relevant in tax assessment cases." *McGraw–Edison*, 573 A.2d at 251 (footnote omitted). The general rule of property taxation is that the value of the property is the basis of taxation and the standard of valuation is actual, market or fair cash value. 72 Am.Jur.2d *State and Local Taxation* § 753 (1974).

The assessor for the City acknowledged his reliance on the value in use concept in assessing equipment located in the City. He quoted from *Property Appraisal and Assessment Administration*, published by the International Association of Assessing Officers in 1990, in which he emphasized the distinction between value-in-use and value-in-exchange:

> Kinds of value: Adam Smith's distinction between value in use and value in exchange is important. The property may have one value in use and a significantly different value in exchange. The value in use embodies the premise that the object's value is related to its current use.... Value in exchange, however, is determined by the market. Value in exchange is a relative value in that the good must be compared to other substitute goods and services in a competitive open market.

The assessor specifically stated to the Board that: "we are dealing with a value-in-use concept."

It is also apparent that the Board relied on the concept of value-in-use in making the assessment here at issue. In its decision, it states:

> Depreciation of more than 50% over the first two years, as suggested by IBM Credit, *does not recognize the residual value in use.* Furthermore, the figures contained in the April, 1991 and April, 1992 editions of Computer Price Watch, while reflective of the value to people trading in the used computer market, *do not account for the added use value.* The Board finds depreciation of 20% per year reflects the decline in value due to advances in technology as well as the residual use value of the subject property.

(emphasis added). Although local assessors properly have latitude in choosing among assessment methods that are relevant to the determination of market value as defined by our cases, they cannot use a methodology that is irrelevant to the market value of the personal property at issue. Because the market value, not the value-in-use, is the benchmark on which assessments are based, the Board erred in utilizing value-in-use as a basis for determining the depreciation of the computer equipment.[1]

---

1. The lease payments cited by the court are relevant only to the valuation of the lease (the present value of the right to receive monthly payments for the remaining term of the lease) and the value of the equipment on the first day of the lease (in this case the present value of the right to receive 36 monthly payments plus an estimation of the market value of the equipment at the end of the 36 months). The lease, in this case, was a financing technique. The lease payments are irrelevant to the determination of just value of equipment on April 1, 1991 and April 1, 1992.