NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2018-0680

VENTAS REALTY LIMITED PARTNERSHIP

v.

CITY OF DOVER

Argued: October 23, 2019
Opinion Issued: January 10, 2020

Hamblett & Kerrigan, P.A., of Nashua (Kevin P. Rauseo and Andrew J. Piela on the brief, and Mr. Rauseo orally), for the plaintiff.

Mitchell Municipal Group, P.A., of Laconia (Walter L. Mitchell and Laura Spector-Morgan on the brief, and Ms. Spector-Morgan orally), for the defendant.

HICKS, J. The plaintiff, Ventas Realty Limited Partnership (Ventas), appeals an order of the Superior Court (Howard, J.) denying its request for an abatement of the real estate taxes it paid the defendant, the City of Dover (City), for the 2014 tax year. We affirm.

The trial court found, or the record establishes, the following facts. The subject real estate consists of a 5.15-acre site containing a skilled nursing facility serving both short-term and long-term patients, two garages, and a parking lot. At issue is the City's April 1, 2014 assessment of the real estate at

a value of $4,308,500.  Ventas alleges that it timely applied to the City for an abatement of its 2014 taxes.  The City presumably denied or failed to act upon the request, and Ventas, thereafter, petitioned the superior court for an abatement pursuant to RSA 76:17 (Supp. 2018), alleging that the City had unlawfully taxed the property in excess of its fair market value.

The trial court held a two-day bench trial at which the parties' experts testified.  Ventas's expert was Raymond A. Dennehy, III, president of Health Care Valuation Advisors, Inc.  The City's expert was Melanie Kosich, a former nursing home administrator and director of Tellatin, an entity affiliated with Integra Healthcare Services.  The parties stipulated that in 2014, the City used an equalization ratio of 95.1%.

Both experts opined that the property's highest and best use is as a skilled nursing facility.  The experts also agreed that the most reliable method for determining the property's fair market value is the income capitalization method, although the City's expert also completed analyses under the sales comparison and cost approaches.  Both experts examined the same comparable properties and they also used similar definitions of "fair market value."  In his May 2016 report, Dennehy concluded that the property's fair market value as of April 1, 2014, at its highest and best use as a skilled nursing facility, was $1,700,000.  In her October 2017 report, Kosich opined that the property's fair market value as of April 1, 2014, at its highest and best use as a skilled nursing facility, was $4,700,000.

The main difference between the approaches of the two experts is that Kosich used both market projections and the property's actual income and expenses from 2012, 2013, and 2014 to forecast the property's future net income, while Dennehy did not.  Dennehy used the property's actual income and expenses for the 11 months before the April 1, 2014 valuation date, without any market-based adjustments.

Despite their different approaches, the experts gave similar estimates of the property's projected gross income for tax year 2014: Kosich's estimate was $10,063,865, and Dennehy's estimate was $10,147,068.  Both experts also used similar capitalization rates: Kosich used a 13.5% capitalization rate, and Dennehy used a 12.6% capitalization rate.  At trial, Ventas stipulated to Kosich's capitalization rate.

The experts differed greatly in their estimates of the property's projected gross operating expenses for tax year 2014.  Dennehy relied upon the property's actual operating expenses for the 11 months before the April 1, 2014 valuation date, opining that the expenses for those months, annualized to represent a full year, "provide[d] the most reliable indication of the subject's stabilized operating expenses."  He calculated the property's gross operating expenses to be $9,936,601.  Dennehy observed that the subject property's

2

operating expenses are higher per patient day than in comparable properties, but opined that "this reflects the lower occupancy at the subject than the comparables, which results in higher expenses per patient day."

By contrast, after examining the expenses of comparable facilities and applying an inflation factor based upon market trends, Kosich assigned values to the different categories of operating expenses. For example, as to nursing expenses, Kosich used the property's actual nursing expenses in 2013 and 2014 for each category of nursing professional and compared those expenses with the 2013 nursing expenses of five comparable properties. She took into account the ratio of total revenue that nursing typically represents for a skilled nursing facility (30% to 45%) and applied an inflation rate to nursing expenses based upon market trends. Based upon those figures, she assigned a value to the property's forecasted nursing expenses that fell within its actual 2013 and 2014 expenses and the average expenses of the comparable properties. She conducted a similar analysis for other categories of operating expenses. Ultimately, Kosich estimated the property's total forecasted operating expenses to be $9,016,402.

The trial court concluded that "Dennehy's approach . . . does not accurately reflect the overall value of the property based on forecasted net income the property would have generated on the open market in 2014," and, thus, decided that Ventas had not "sufficiently proved the property's fair market value under the income capitalization approach." Accordingly, the trial court ruled that Ventas failed to meet its burden of proof to obtain an abatement for tax year 2014. This appeal followed.

To succeed on its tax abatement claim, Ventas had the burden of proving by a preponderance of the evidence that it paid more than its proportional share of taxes for tax year 2014. See Porter v. Town of Sanbornton, 150 N.H. 363, 367 (2003). "To carry the burden of proving disproportionality, the taxpayer must establish that the taxpayer's property is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the town." Id. at 368; see Appeal of Pub. Serv. Co. of N.H., 170 N.H. 87, 94 (2017).

Generally speaking, fair market value refers to "the price which in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy, taking into account all considerations that fairly might be brought forward and reasonably given substantial weight in such bargaining." Society Hill at Merrimack Condo. Assoc. v. Town of Merrimack, 139 N.H. 253, 255 (1994) (quotation omitted); see Appeal of Pennichuck Water Works, 160 N.H. 18, 37 (2010). The determination of fair market value is a question of fact. Society Hill at Merrimack Condo. Assoc., 139 N.H. at 255. As the trier of fact, the trial court was entitled to accept or reject such portions of the evidence as it found proper, including that

of expert witnesses. Public Serv. Co. of N.H. v. Town of Bow, 170 N.H. 539, 542 (2018).

We will uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. Marist Bros. of N.H. v. Town of Effingham, 171 N.H. 305, 309 (2018). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. Id.

In this case, both experts used the income capitalization method to determine the fair market value of the subject property. The income capitalization method "is an established and well-accepted method for determining the value of income-producing property," such as the skilled nursing facility at issue. Brickman v. City of Manchester, 119 N.H. 919, 921 (1979) (quotation omitted). "The income capitalization approach" to calculating the fair market value of real estate "measures the present value of property on the basis of the future net income the property could produce for the owner." Rollsworth Tri-City Trust v. City of Somersworth, 126 N.H. 333, 335 (1985). "The net income is the [income] the property would generate on an open market, less the normal and usual costs of operation." Id. "This figure is then capitalized to determine present worth." Id.

On appeal, Ventas argues that the trial court erred by crediting Kosich's appraisal over Dennehy's appraisal. According to Ventas, doing so was error because: (1) Kosich's appraisal "inappropriately reduced the nursing and medical costs incurred by the facility" (bolding omitted); (2) the comparable properties that Kosich used did not "offer[ ] the same mix of services that [Ventas] offered"; (3) Kosich "had no medical or nursing training" and, therefore, "had no idea what a safe staffing level was for this facility, given its patient needs, and whether the suggested cuts to the facility expenses would cause the remaining nurses" to risk losing their licenses or would risk patient health and safety; (4) Kosich's appraisal violates public policy because it arbitrarily reduces the facility's nursing expenses; and (5) Kosich used post-assessment data. As to nursing expenses, in particular, Ventas argues that "absent evidence from the City that demonstrated the facility's expenses were excessive for this particular property, it was error for the Trial Court to adopt the City's opinion as to appropriate nursing expenses, which was based on a 'market rate,' and thus, the City's capitalization of income calculation."

All of Ventas's arguments fault the trial court for finding Kosich's valuations more credible than Dennehy's. See Public Serv. Co. of N.H., 170 N.H. at 542. "Credibility, of course, is for the trial judge to determine as a matter of fact and if the findings could reasonably be made on all the evidence,

4

they must stand." Id. (quotation omitted). Ventas's assertions "concern the proper weight to be accorded" Kosich's testimony and report. LLK Trust v. Town of Wolfeboro, 159 N.H. 734, 739 (2010). "However, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." Id.

Moreover, even if we were to agree with Ventas that Kosich's methodology was flawed, Ventas does not prevail in this appeal. Ventas had the burden of proof, not the City. See Porter, 150 N.H. at 367. To the extent that Ventas argues that it met its burden of proving disproportionality solely by showing that Kosich's methodology was flawed, we disagree. See LLK Trust, 159 N.H. at 739. "Disproportionality, and not methodology, is the linchpin in establishing entitlement to a petition for abatement." Id. (quotation and brackets omitted). "While it is possible that a flawed methodology may lead to a disproportionate tax burden, the flawed methodology does not, in and of itself, prove the disproportionate result." Id. (quotation and brackets omitted).

Contrary to Ventas's contention, the trial court did not "adopt" Kosich's appraisal; rather, it determined that Dennehy's appraisal failed to meet Ventas's burden of proof. Specifically, the court found that Dennehy's appraisal "did not result in [a] credible opinion[ ] of market value and made specific findings to support its rejection of [that] appraisal[ ]." Appeal of Pub. Serv. Co. of N.H., 170 N.H. at 97.

The trial court faulted Dennehy for failing to explain how the property's actual income and expenses compared to market rates, ruling that without such information, his report did "not provide sufficiently reliable evidence of the property's future net income." The court observed that Dennehy failed to analyze "how the property would perform on the open market" during the 2014 tax year. The court noted that "while Dennehy [did] not completely ignore the income and expenses of comparable properties, he [did] not utilize the comparable properties as evidence of market projections, as required under the income capitalization approach." Instead, "he merely explain[ed] why the actual income and expenses of the comparable properties are different from the actual income and expenses of the subject property." The trial court concluded that "[w]hile these explanations may provide justification for adjusting . . . market-based income and expenses to reflect the specific features of the subject property that would contribute to its inability to obtain market level income, Dennehy [did] not establish or consider those necessary market figures." See Appeal of Net Realty Holding Trust, 128 N.H. 795, 800 (1986) (upholding rejection of the taxpayer's appraisal, in part, because the taxpayer failed to demonstrate "that the income figures represented the rental income available on the market as distinguished from contract rent, that is, actual income derived from insufficiently profitable leases" where the expert failed to present evidence of comparable rentals to substantiate his claim that the

5

taxpayer's rental income represented market levels and there was other evidence that at least some of the rates had fallen below market-level); Brickman, 119 N.H. at 921 (holding that because evidence supported implied finding that rental unit vacancies would increase in the future, master did not err by allowing certain deductions for such vacancies when calculating shopping center's projected gross and net income).

The trial court determined that, with respect to expenses in particular, Dennehy's report failed to demonstrate that the property's actual expenses "constitute the expenses the facility would incur on the open market." The court observed that "even though the facility may experience higher costs as a result of higher levels of admissions and discharges, higher uses of intravenous drugs, and higher levels of laboratory work, Dennehy does not explain how these characteristics would impact the facility's expenses on the open market in 2014 when compared with other facilities." The court concluded that "[w]ithout forecasting the cost and demand for these services on the open market in 2014, [Ventas] provides no way to determine whether the facility would incur the same expenses in 2014 as it did in the prior year."

The record supports these findings. Dennehy observed in his report that "the subject property has a lower occupancy rate than the comparables," and that, as a result, it "has higher operating expenses per patient day than the comparables." Dennehy testified that he did not adjust the property's actual operating expenses because, in his opinion, "given the occupancy, given the competitive position of this property, and understanding the physical and functional limitations of the property, . . . competent management had adjusted expenses appropriately to take care of patients, take care of the building the best they could, and provide appropriate care." Dennehy further testified that the subject facility was operated "competently" based upon his interview of the facility's administrator.

Ventas argues that Dennehy's use of "actual expenses versus market data in his calculations" was proper because "the subject property differs from other properties in the market." To support this assertion, Ventas relies upon Royal Gardens Co. v. Concord, 114 N.H. 668 (1974), City of St. Louis v. Union Quarry & Construction Co., 394 S.W.2d 300 (Mo. 1965), and In re Appeal of V.V.P. Partnership, 647 A.2d 990 (Pa. Commw. Ct. 1994). None of these cases stand for the proposition that use of actual expenses instead of market expenses is proper when the subject property differs from other properties in the market.

In addition, Ventas asserts that the property's "actual expenses are consistent with what is prevalent in the market." This assertion is inconsistent with Dennehy's report in which he stated that "the subject property has higher operating expenses per patient day than the comparables."

6

The trial court also found that Dennehy's approach to calculating fair market value was flawed because he relied upon the property's actual income and expenses for only the 11 months preceding April 1, 2014.  The court observed that, although Dennehy described the property's operating expenses for those months as "consistent" with the property's operating expenses for the last eight months of 2013, in fact, the two time periods overlapped.  Thus, the court determined,

> the similarities between these two figures are not a result of nearly identical expenses in two consecutive years, which might provide some support that the income and expenses of the following year will closely track the income and expenses of prior consecutive years.  Rather, these figures are likely similar because they are derived from eight months of the same year (May 2013 through December 2013).

(Emphasis added.)  The court concluded that "even if Dennehy could accurately project market expenses for the 2014 tax year based only on actual income over a period of prior years[,] . . . his analysis compares two figures from roughly the same period of time rather than figures from separate consecutive years," which is "insufficient to accurately forecast . . . the net income the property would earn in 2014."  Additionally, the court found that "while Dennehy refers to data from the preceding 11 months as the 'Stabilized Estimate,' he provides only conclusory assertions to explain how he came to his conclusion."  Dennehy's report supports these findings.

In sum, the trial court "made numerous, specific findings which are supported by the record," as to why it rejected Dennehy's appraisal.  Appeal of Pub. Serv. Co. of N.H., 170 N.H. at 99.  Because the trial court's findings regarding Dennehy's appraisal are supported by the record and are not erroneous as a matter of law, we uphold them.  Id.  Accordingly, we uphold the trial court's determination that Dennehy's appraisal failed to meet Ventas's burden of proof.

Ventas next argues that the trial court erred by considering the 2015 transfer of ownership of the property from Ventas to a related entity to be relevant.  Ventas asserts that the 2015 transfer was not arms-length, does not reflect the property's 2014 value, and should not have been considered.  However, the trial court did not rely upon the transfer as evidence of the property's 2014 value.  Rather, the court relied upon Ventas's use of the City's assessment for transfer tax purposes to assess Ventas's credibility.

At the time of the 2015 transfer, Ventas represented to the City assessor that the property's value was $4,308,500, the same value at which the City had assessed the property.  Ventas used this value for transfer tax purposes when the property was conveyed.  The court stated that this fact "cast[ ] further

7

doubt on [Ventas's] position that it is paying a disproportionate amount of taxes." While acknowledging that the property was not actually transferred for $4,308,500 because "the property transfer occurred as a result of a corporate split," the court determined that the fact that Ventas used the City's assessment for transfer tax purposes made its assertions regarding the inaccuracy of that assessment not credible. We find no error in the trial court's reliance upon Ventas's use of the City's assessment to judge Ventas's credibility.

To the extent that Ventas makes other arguments in its brief, they either are insufficiently developed for our review, see Sabinson v. Trustees of Dartmouth College, 160 N.H. 452, 459 (2010), or do not warrant extended consideration, see Vogel v. Vogel, 137 N.H. 321, 322 (1993). Any issue that Ventas raised in its notice of appeal, but did not brief, is deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.