Merrimack
No. 92-062

## *In re* KEARSARGE REGIONAL SCHOOL DISTRICT

January 27, 1994

*Gallagher, Callahan, & Gartrell, P.A.*, of Concord (*Robert J. Finn* and *David A. Garfunkel* on the brief, and *Mr. Garfunkel* orally), for the petitioners, the Towns of Warner and Bradford.

*Upton, Sanders & Smith*, of Concord (*John F. Teague* on the brief and orally), for the Towns of New London and Newbury.

*Daschbach, Kelly & Cooper, P.A.*, of Lebanon (*Deborah J. Cooper* on the brief), by brief for the Town of Springfield.

*John P. Arnold*, attorney general (*Ann F. Larney*, assistant attorney general, on the brief and orally), for the State.

*Stebbins, Bradley, Wood & Harvey, P.A.*, of Hanover, for the Kearsarge Regional School District, filed no brief.

*Upton, Sanders & Smith*, of Concord, for the Town of Sutton, filed no brief.

BATCHELDER, J. The petitioners, the Towns of Warner and Bradford, appeal from a declaratory judgment entered by the Superior Court (*McGuire*, J.), denying their constitutional challenges to RSA 195:18 (1989), the procedure for organizing cooperative school districts, and to the two-thirds majority provision for amending articles of agreement. The thrust of the petitioners' argument is that they are unlawfully burdened financially in the support they are required to render to the Kearsarge Regional School District (KRSD). In particular they argue: (1) RSA 195:18 violates part I, article 37 of the State Constitution because it improperly delegates legislative authority to the State Board of Education (board); (2) RSA 195:18 violates the equal protection guarantees of part I, articles 1 and 2 of the State Constitution and the fourteenth amendment to the Federal Constitution because it creates two distinct classes of similarly situated voters without a legitimate basis for doing so; and (3) the provision contained in KRSD's articles of agreement that requires a two-thirds majority vote in order to amend the apportionment formula also violates State equal protection guarantees. We affirm.

KRSD was formed pursuant to the provisions of RSA 195:18, which governs the organization of cooperative school districts formed after June 30, 1963. *See* Laws 1963, 258:1. It includes the petitioners and the Towns of New London, Newbury, Sutton, Springfield, and Wilmot. KRSD's articles of agreement provide that its provisions can be amended only by a two-thirds majority vote of the district.

The trial court found that RSA chapter 195 did not contain an unlawful delegation of legislative power to the board, that there was no violation of equal protection guarantees because the 1963 amendment permitted adoption of different voting pluralities to amend the financing support formula, and that the super majority requirement permitted by the statute, standing by itself, did not violate equal protection safeguards.

New Hampshire first ventured into the field of cooperative school districts in 1947 with a view toward providing greater educational opportunities while at the same time improving the efficient use of resources and conserving money raised by local taxation. *See* Laws 1947, ch. 199. In its effort to bring about consolidation of various school districts into more efficient administrative units, the legislature devised a single formula for the apportionment of financial support to apply to all school cooperatives.

This early law provided that capital costs were to be apportioned on the basis of a ratio of equalized valuation and operating costs on the basis of average daily pupil membership from each of the participating districts. *See* Laws 1947, 199:7, :8. Later amendment to the apportionment formula allowed, by majority vote of the cooperative district, a choice between two apportionment formulae. *See* Laws 1951, 213:1, par. 8; Laws 1959, 195:1. Until the cooperative school law was comprehensively revised in 1963, however, only one minor deviation from the legislatively-mandated apportionment formulae came to light. In 1961, the legislature included a provision for "[s]ome other formula offered by the cooperative school board, adopted by the cooperative school district and approved by the board." Laws 1961, 206:4.

The 1963 overhaul of the cooperative school enabling legislation was brought about by three major considerations before the legislature. First, the development of cooperatives was not gaining favor among the hundreds of school districts throughout the State. Second, a legislatively-created commission reported in part:

"A majority of the high schools of the state do not have faculties of sufficient size to provide instruction of necessary breadth and depth . . . [and] do not have average daily memberships large enough to support a sufficient faculty and operate economically.

. . . .

The cooperative school law . . . has had limited success in that:

a. Few towns are now in cooperative school districts. b. Some of the cooperatives formed are inadequate in average daily memberships. c. Some of the cooperatives contain illogical groupings of towns."

THE INTERIM COMMISSION ON EDUCATION, REPORT TO THE GENERAL COURT OF 1963 at 20 (1963). Third, the 1958 report of the New Hampshire State Department of Education entitled "Minimum Standards and Recommended Practices for New Hampshire Secondary Schools Grades 9–12" for the first time provided a clear statement of the standards that secondary schools had to meet for State Department of Education approval.

The problem that bedevils the petitioners was well articulated by one of KRSD's own committees created to study the funding inequity that is the nub of this appeal. Twenty years ago the committee appointed to study the apportionment of KRSD's costs reported to the district meeting:

"If the burden of school cost has fallen unevenly upon the member town, it is the committee's finding that the principal sources of this difficulty are (1) the failure of the State to meet its funding obligations which were, in part, the basis upon which the District was formed; and (2) the inherent inequities in the property tax system through which the member towns collect the share of District expenses allocated to them."

SIXTH ANNUAL REPORT OF THE KEARSARGE REGIONAL SCHOOL DISTRICT FOR THE FISCAL YEAR JULY 1, 1971 TO JUNE 30, 1972 at 35 (March 1973).

■■ On appeal, we will not disturb the trial court's ruling absent an abuse of discretion or a finding that the decision is unsupported by the evidence or legally erroneous. *See Hillside Assocs. of Hollis v. Maine Bonding & Cas. Co.*, 135 N.H. 325, 330, 605 A.2d 1026, 1029 (1992); *Maryland Cas. Co. v. Waumbec Mills*, 102 N.H. 200, 204, 152 A.2d 619, 622 (1959). Where applicable, reliance is grounded on the New Hampshire Constitution, part I, articles 1 and 2, because the provisions of the fourteenth amendment to the United States Constitution provide no greater relief to the petitioners. *LeClair v. LeClair*, 137 N.H. 213, 221–22, 624 A.2d 1350, 1355 (1993). Similarly, we analyze the petitioners' improper delegation argument under the protections afforded by part I, article 37. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983).

The petitioners first argue that RSA 195:18 unconstitutionally delegates legislative authority by authorizing the board to approve an

apportionment amendment formula without providing the requisite standards. Their unlawful delegation argument, however, is a narrow one. In their brief and in memoranda supplied to the trial court, the petitioners assert that they are "challenging only the amendment procedure as applied to the apportionment formulas and not the entire process by which articles of agreement are amended." In support of this contention, they claim that RSA 195:2 (1989) does not provide sufficient direction "regarding the approval or rejection of provisions contained in articles of agreement relating to the amendment of the apportionment formula." They assert both a lack of announced policy and a lack of standards.

■ The statutory language designed by the legislature to guide the board is set forth in RSA 195:2, I:

> "It is the purpose of this chapter to increase educational opportunities within the state by encouraging the formation of cooperative school districts which will each be a natural social and economic region with an adequate minimum taxable valuation and a number of pupils sufficient to permit the efficient use of school facilities within the district and to provide improved instruction. The board may formulate and adopt additional standards *consistent with this purpose and with these standards*; and the board shall approve articles of agreement for a proposed cooperative school district, or agreements for the enlargement of a cooperative school district, only after determining that the formation or enlargement of the district will be in accord with such standards and the purposes set forth herein."

(Emphasis added.) In order to pass constitutional muster, the delegation of authority to the board to approve the amendment procedure in the articles of agreement must contain "a declared policy and a prescribed standard laid down by the legislature." *Conway v. Water Resources Board*, 89 N.H. 346, 351, 199 A. 83, 88 (1938). If the policy and standard are adequately and sufficiently prescribed, "discretionary authority may be delegated to those assigned to administer the law." *Id.*

We reject the petitioners' argument that the board is devoid of a policy and standard to apply to the evaluation of the amendment procedure and, therefore, that "the statutorily permissible spectrum . . . is from one vote to unanimity." It defies credulity to suggest that, given a purpose of encouraging the formation of cooperative school districts, the board would approve, let alone be presented with, such extreme proposals.

The petitioners chose to enter into a collective educational scheme, the financial assessment of which could only be amended by a two-thirds majority vote. They now argue that permitting the board to approve what they chose to adopt is somehow an unconstitutional delegation of legislative authority. In so arguing, they seek to protect themselves from having been given too large a dose of democracy.

■ The trial court found that RSA 195:2 set forth "a declared policy and a prescribed standard" and, therefore, that the statute does not rise to the level of an unlawful delegation of legislative authority. We find no error in the trial court's assessment. *Cf. Smith Insurance, Inc. v. Grievance Committee*, 120 N.H. 856, 861–62, 424 A.2d 816, 819 (1980).

■ The petitioners next argue that RSA 195:18 treats similarly situated voters in cooperative school districts differently depending upon whether the district was formed before or after the effective date of the 1963 amendment and, therefore, violates part I, articles 1 and 2 and the fourteenth amendment. We note that the petitioners presented their constitutional challenge to the trial court as one lacking a rational relationship to a legitimate State interest. Likewise on appeal, they do not challenge the trial court's application of the rational relationship test to their equal protection argument. *See LeClair v. LeClair*, 137 N.H. at 223, 624 A.2d at 1356. Consequently, we presume that RSA 195:18 is valid and will sustain its constitutionality "if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* (quotation omitted); *cf. Claremont School District v. Governor*, 138 N.H. 183, 192, 635 A.2d 1375, 1381 (1993) ("in New Hampshire a free public education is at the very least an important, substantive right").

■ The short but intense history of cooperative school development in New Hampshire points to a clear rational relationship between the purposes of the legislation and the resulting disparity between the voting power of those in cooperatives formed before June 30, 1963, where amendments to funding criteria were by simple majority vote, and those in cooperative districts formed after June 30, 1963, where the voters could *choose* the two-thirds provision. In an effort to give impetus to an important advancement in educational opportunity after earlier legislation had produced only sparse results, the legislature sought to permit the organization of cooperatives at the local or grass roots level in a manner similar to the organization of a corporation by articles of agreement. Such a provision permitted, by consensus of the towns involved, the determina-

tion of a funding formula and an amendment procedure. In light of this background, we cannot say that the requisite rational relationship is lacking in this case.

■    The same analysis and result applies to the petitioners' complaint that equal protection is somehow denied by the two-thirds majority voting requirement standing alone. The experience of our government, as reflected in our statutory history of two centuries, points to the reasonableness of requiring a super majority when matters of substance, such as borrowing capital over a long term period by issuing bonds, *see* RSA 33:8 (Supp. 1992), or amending our Constitution itself, *see* N.H. CONST. pt. II, art. 100, are before the voters. The two-thirds majority voting requirement to amend the articles of agreement of the KRSD stands on no less strong footing and clearly meets the rational relationship test. *See LeClair v. LeClair*, 137 N.H. at 223, 624 A.2d at 1356.

*Affirmed.*

JOHNSON AND THAYER, JJ., did not sit; the others concurred.