Hillsborough-southern judicial district
No. 93-426

## SOCIETY HILL AT MERRIMACK
## CONDOMINIUM ASSOCIATION & a.

v.

## TOWN OF MERRIMACK

December 28, 1994

*Wenger & Cronin, P.C.*, of Bedford (*Peter D. Wenger* on the brief and orally), for the plaintiffs.

*Bossie, Kelly, Hodes & Buckley, P.A.*, of Manchester (*Laurence E. Kelly* and *J. Mark Cranford* on the brief, and *Mr. Cranford* orally), for the defendant.

THAYER, J. The plaintiffs, Society Hill at Merrimack Condominium Association and 254 unit owners, appeal the decision of the Superior Court (*Murphy*, J.) denying an abatement of the property taxes imposed by the defendant, the Town of Merrimack (town). We affirm.

The plaintiffs petitioned the town for an abatement of taxes assessed as of April 1, 1991, on 254 condominium units at the community known as Society Hill at Merrimack. The town denied the plaintiffs' request for an abatement. The plaintiffs then filed a petition for abatement of taxes in superior court pursuant to RSA 76:17 (Supp. 1993), and a hearing was held on April 20, 1993. At the hearing, the plaintiffs introduced evidence through an expert witness regarding the appropriate valuation for the subject properties. The expert's appraisals were based in part on a comparison of Society Hill units sold at a "market auction" conducted by the condominium developer during May 1991. The market auction consisted of an intensive advertising campaign followed by a minimum bid, no reserve auction. On April 29, 1993, the court denied the petition for abatement because the plaintiffs failed to demonstrate that their properties were assessed disproportionately higher than other properties in Merrimack.

We will not disturb the trial court's decision absent an abuse of discretion or a finding that the decision is unsupported by the evidence or erroneous as a matter of law. *In re Kearsarge Regional School Dist.*, 138 N.H. 211, 214, 636 A.2d 1033, 1035 (1994); *In re Tracy M.*, 137 N.H. 119, 125, 624 A.2d 963, 966 (1993).

"To succeed in being granted an abatement of taxes, the plaintiff[s] [have] the burden of proving by a preponderance of the evidence that [they are] paying more than [their] proportional share of taxes." *City of Manchester v. Town of Auburn*, 125 N.H. 147, 154, 480 A.2d 60, 65 (1984). The plaintiffs must show that "[their] assessment was disproportionately higher in relation to [their] true value than was

the case as to other property in the [town]." *Appeal of Lakeshore Estates*, 130 N.H. 504, 505, 543 A.2d 412, 413 (1988).

In this case, the trial court found that the plaintiffs failed to establish the fair market value of the subject properties, and therefore failed to demonstrate that the subject properties were assessed disproportionately higher than other properties in Merrimack. The trial court based its decision in part on its finding that the sale prices of the property sold through the market auction, relied on by the plaintiffs to establish the value of their own properties, did not constitute fair market value. The plaintiffs challenge this finding.

 The trial court relied on this court's definition of fair market value as "the price which in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy, taking into account all considerations that fairly might be brought forward and reasonably given substantial weight in such bargaining." *Opinion of the Justices*, 131 N.H. 504, 510, 555 A.2d 1095, 1099 (1989) (quotation and citation omitted). The plaintiffs argue that the trial court erred in applying that definition because: (1) alternative definitions were possible; and (2) the definition was improper for tax abatement cases because it was developed in eminent domain cases. The plaintiffs correctly note that there are alternative definitions of fair market value that might have been used by the trial court, *see, e.g., Appeal of Lakeshore Estates*, 130 N.H. at 508, 543 A.2d at 415; *see also* BLACK'S LAW DICTIONARY 597 (6th ed. 1990), but they incorrectly conclude that the trial court's choice of this, as opposed to some other formulation, resulted in reversible error. The fact that the definition was developed in an eminent domain case does not invalidate the trial court's use of it in this setting. Determination of fair market value is an issue of fact, and we will not disturb a finding by a trial court unless it is clearly erroneous or unsupported by the evidence. *City of Manchester*, 125 N.H. at 154, 480 A.2d at 65. The issue is whether the trial court could have correctly concluded that the sale prices that resulted from the market auction were not indicative of the actual value of the subject properties. We have recognized numerous factors that a court should consider when determining whether sale price is an indication of fair market value, including whether the sale was an arm's length transaction, whether additional incentives were offered, whether unusual duress existed against either the buyer or seller, and whether some relationship existed between the buyer and seller that would influence the sale price. *See, e.g., Appeal of Lakeshore Estates*, 130 N.H. at 508, 543 A.2d at 415; *Rollsworth Tri-City Trust v. City of Somersworth*, 126 N.H. 333, 335–36, 493 A.2d 462, 464 (1985); *Berthiaume v. City of Nashua*, 118 N.H. 646, 648, 392 A.2d 143, 144–45

(1978). Ample evidence supports the trial court's finding that the market auction prices were not indicative of the fair market values of the properties sold. For example, there were no negotiations between the buyer and seller; the auction was a minimum bid, no reserve auction, meaning that once the minimum bid had been achieved, the seller could not stop the sale; and the plaintiffs' expert stated that auctions were not normally relied on for real estate appraisals. These facts support the trial court's ruling that the prices resulting from the auction did not constitute fair market value. This court need not decide whether an auction of real estate can ever be used as an indicator of fair market value. We simply hold that the evidence supports the trial court's finding that in this case, the market auction sales did not result in fair market values, and therefore the sales could not be used to establish the appropriate value of the plaintiffs' properties.

██ ██ The plaintiffs next argue that the trial court erred in discounting the testimony of their expert witness because he had relied upon the market auction sales in making his appraisals. A fact finder has the discretion to evaluate the credibility of the evidence and may choose to reject that evidence in whole or in part. *Johnson v. Nash*, 131 N.H. 731, 734, 559 A.2d 842, 844 (1989); *New England Power Co. v. Littleton*, 114 N.H. 594, 607, 326 A.2d 698, 706 (1974). Credibility of witnesses is a question of fact and we will not overrule the trial court's decision unless the finding is clearly erroneous or unsupported by the evidence. *Rancourt v. Town of Barnstead*, 129 N.H. 45, 50, 523 A.2d 55, 59 (1986). The plaintiffs' expert admitted that auctions were not normally relied on for real estate appraisals and that he had never before used auction figures for appraisals. Given the evidence in the case, the trial court could properly conclude that the evidence given by the plaintiffs' expert witness was not credible.

The plaintiffs further argue that the trial court erred in requiring the expert appraiser to prove that the values of comparable sales unrelated to the market auction were fair market values. The court ruled that it did not find those other appraisals credible. As discussed above, determinations of credibility rest with the sound discretion of the trial court. *Johnson*, 131 N.H. at 734, 559 A.2d at 844; *New England Power Co.*, 114 N.H. at 607, 326 A.2d at 706. Evidence was introduced at trial that cast doubt upon the methodology used by the plaintiffs' expert. Given that evidence combined with the expert's error in relying on the market auction sales, we cannot say that the trial court's findings regarding the credibility of the expert's appraisals were clearly erroneous.

The plaintiffs also argue that the trial court applied an improper burden of proof. The trial court's order stated that "because the

plaintiff has not demonstrated that the [comparable sales] represent fair market value, it has not demonstrated that the Society Hill was assessed at 155% of its fair market value. Consequently, the plaintiff has failed to demonstrate that its property was assessed disproportionately higher than other property in Merrimack." The plaintiffs argue that this statement indicates that the trial court required that the plaintiffs prove they had been assessed at 155% of their fair market value, as opposed to the town-wide ratio of 123%. A fair reading of the trial court's opinion makes it clear that its reference to the plaintiffs' failure to prove the 155% assessment is ancillary to its actual decision. The crux of the trial court's decision is that the plaintiffs failed to prove by a preponderance of the evidence that their properties had been assessed disproportionately higher than other property in Merrimack. The amount of alleged overassessment was not an issue because the plaintiffs, by failing to establish that the assessment used by the town was inaccurate, failed to prove that they had been overassessed at all.

The plaintiffs' final argument is that the trial court erred in failing to make a finding regarding the actual fair market value of each of the 254 subject properties. This argument is also unpersuasive. While the trial court did not explicitly state that it was adopting the fair market values alleged by the town, in ruling that the plaintiffs had failed to prove the overassessment, the trial court necessarily accepted the town's assessment.

*Affirmed.*

All concurred.