Rockingham
No. 2001-434

WINNACUNNET COOPERATIVE SCHOOL DISTRICT

v.

TOWN OF SEABROOK

Submitted: July 26, 2002
Opinion Issued: November 18, 2002

*Casassa and Ryan,* of Hampton (*Robert A. Casassa* on the brief), for the plaintiff.

*Donahue, Tucker & Ciandella,* of Exeter (*Robert D. Ciandella* and *Robert M. Derosier* on the brief), for the defendant.

BROCK, C.J. The defendant, the Town of Seabrook (town), the intervenors, individual town taxpayers, and the plaintiff, the Winnacunnet Cooperative School District (WCSD), all appeal from the Superior Court's (*Abramson,* J.) denial of their cross-motions for summary judgment. We treat this matter as an interlocutory appeal under Supreme Court Rule 8 and reverse.

## I. Background

We accept the statement of the case presented in the agreed-upon facts submitted to the lower court. *See Trovato v. Deveau,* 143 N.H. 523, 524 (1999). The WCSD was organized in 1957. Since its inception, its members have been the towns of Seabrook, Hampton, Hampton Falls and North Hampton.

When the WCSD was formed, the statutes governing apportionment of costs among member towns permitted a cooperative school district to allocate capital costs pursuant to one formula and operating costs pursuant to a different formula. *See* Laws 1955, 334:9, :10. Laws 1955, 334:9 mandated that capital costs be allocated according to a formula that used the equalized valuation of town property as its basis, while Laws 1955, 334:10 gave cooperative school districts a choice between two formulas for allocating operating costs. One formula was the same as the formula required for capital costs; the other formula relied both upon equalized valuation and upon average daily pupil membership. *See* Laws 1955, 334:9, :10; *In re Kearsarge Regional School Dist.,* 138 N.H. 211, 213 (1994).

When the WCSD was first organized, the applicable statutes required the qualified voters of the constituent towns of a proposed cooperative school district to choose a formula by which to apportion operating costs at the first organizational meeting of the cooperative school district. *See* Laws 1953, 225:3; Laws 1955, 334:7, :10. At the first organizational meeting of the WCSD, the qualified voters of the member towns voted to allocate operating costs pursuant to the formula that used both equalized valuation and average daily pupil membership as its bases. The legislature approved the WCSD's organizational meeting on July 3, 1957. Laws 1957, ch. 415.

In 1959, approximately two years after the WCSD was formed, the legislature amended the statutes governing apportionment of capital and

operating costs to give cooperative school districts a choice of allocation formulas for capital costs. *See* Laws 1959, ch. 195. Also in 1959, a new provision was added that: (1) required that the basis for the apportionment of capital and operating costs be reviewed "[a]t the expiration of the first five-year period and at the expiration of each subsequent five-year period"; and (2) permitted the cooperative school district "by majority vote [to] elect to apportion all such costs" according to one of the statutory formulas. Laws 1959, 195:2. The 1959 amendments took effect on July 1, 1959, and applied "to any cooperative district organized prior to the effective date hereof as well as to such districts hereafter organized." Laws 1959, 195:3, :4.

Two years later, in 1961, when the WCSD was in its fourth year of operation, these provisions were again amended. *See* Laws 1961, ch. 206. The 1961 amendments added a third method by which cooperative school districts could choose to apportion their capital or operating costs. *See* Laws 1961, 206:4, :5. The amendments permitted cooperative school districts to apportion their costs pursuant to "[s]ome other formula offered by the cooperative school board, adopted by the cooperative school district and approved by the board." Laws 1961, 206:4; *see In re Kearsarge Regional School Dist.*, 138 N.H. at 213. These amendments took effect on August 27, 1961. Laws 1961, 206:7.

On March 5, 1963, at the annual meeting of the WCSD, a petition presented a warrant article to the qualified voters of the member towns, asking if the WCSD would adopt by majority vote "a new formula for the apportionment of costs of capital outlay and operation as defined in [Laws 1961, 206:4, :5]." The voters rejected the warrant article.

In 1963, the legislature again amended the statutes governing cooperative school districts. *See* Laws 1963, ch. 258. These amendments took effect on July 1, 1963. Laws 1963, 258:15. The 1963 amendments added a new statute, RSA 195:18, to address procedures for cooperative school districts formed after June 30, 1963. *See* Laws 1963, 258:1.

Laws 1963, 258:1 required any school district, after June 30, 1963, interested in forming a cooperative school district to create a cooperative school district planning board. *See id.* The planning board was then required to prepare proposed articles of agreement, which would set forth, among other items, "[t]he method of apportioning the operating expenses" and "[t]he method of apportioning the capital expenses" of the cooperative school district. *Id.* The statute expressly permitted the cooperative school district to apportion capital and operating costs according to different formulas. *See id.* After the planning board approved the proposed articles of agreement, following public hearing, the voters in each constituent town

were to have an opportunity to vote upon whether to be a part of the proposed cooperative school district. *See id.*

In 1963, the legislature also amended the statute concerning the five-year review period to make the five-year review permissive, instead of mandatory. *See* Laws 1963, 258:7. As amended, this statute provided:

> After the expiration of the first five-year period measured from the date of the first annual meeting and after the expiration of each subsequent five-year period measured from the date of the last change thereto, the basis for the apportionment of all [capital and operating] costs *may* be subject to review, pursuant to an article for that purpose duly inserted in the warrant for a district meeting, and the cooperative school district may then by majority vote elect to apportion all such costs by the adoption of either formula I, II or III, as defined in section 7 of this chapter. Such apportionment may be reviewed in the same manner at any time in order to permit annexation of a school district or an increase in the number of grades for which the district shall be responsible.

*Id.* (emphasis added).

The 1963 amendments also included a savings clause, which provided, in pertinent part:

> Nothing herein contained shall be construed to invalidate the organization of or any action taken by any cooperative school district heretofore organized. The organization of all cooperative school districts completed prior to the effective date of this act and the proceedings taken with respect to the organization of any cooperative school district, the organization of which has not been completed prior to the effective date of this act, are hereby expressly validated and confirmed.

Laws 1963, 258:14.

Since 1963, the WCSD has twice considered whether to change the formulas for apportioning capital and operating costs. At the 1972 annual meeting of the WCSD, the WCSD approved, by majority vote, a warrant article submitted by a petition initiated by town voters to apportion capital and operating costs according to a single formula based solely upon average daily pupil membership. Following the annual meeting, the approved warrant article was submitted to the State Board of Education for approval. A consultant to the State Board of Education advised that

the proposed change was unwise because "financing a cooperative entirely on average daily membership is the least fair method for apportioning school costs among member towns." After review, the State Board of Education declined to approve the change in the formulas for apportionment of costs.

At the 1979 annual meeting of the WCSD, individuals from the town submitted an amended warrant article to see if the WCSD would establish a study committee to recommend whether to revise the methods of apportioning capital and operating costs. The WCSD approved this amended article, and in 1980, the WCSD approved the report of the study committee, which had recommended that the WCSD retain its present allocation methods and that it evaluate these methods again "when more accurate financial data on the effects of the Seabrook Nuclear Power Plant is known."

According to the record, no other actions have been taken by the WCSD to change the methods by which it allocates capital and operating costs among its constituent towns. The WCSD continues to allocate capital and operating costs pursuant to the two formulas it originally adopted in 1957.

## II. Procedural History

The instant dispute concerns the town's refusal in May 2000 to pay its monthly share of capital costs. The town withheld the funds on the ground that the formula for apportioning capital costs based solely upon equalized valuation had never been voted upon by the WCSD and, thus, had never been legally applied to the town.

The WCSD subsequently petitioned for a temporary and permanent injunction to require the town to make its May 2000 payment. In response to this petition, the town asserted that by using different formulas to allocate capital and operating costs among its constituent towns, the WCSD violated the 1959 amendment to RSA chapter 195, which, it claimed, required the WCSD to apportion capital and operating costs pursuant to the same formula and to choose one of two formulas by submitting the issue to a vote. *See* Laws 1959, ch. 195. In addition to seeking a declaration that the formula the WCSD used to apportion capital expenses was illegal, the town asked the court to order the WCSD to reimburse it for any amounts already collected pursuant to this illegal formula.

In July 2000, the trial court held a hearing on the WCSD's petition and granted its request for a temporary injunction. Subsequently, the court granted the motion to intervene filed by four individual town taxpayers.

The intervenors petitioned for a declaratory judgment and injunctive relief. In their petition, they alleged that: (1) the WCSD violated Laws 1996, chapter 158 by using two formulas for allocating capital and operating costs among member towns; (2) the WCSD violated Laws 1996, chapter 158 because it did not follow the requisite statutory procedures for adopting a capital cost formula; (3) WCSD's collection of money for capital expenditures violated the constitutional prohibition against collecting taxes not authorized by statute; and (4) the formula for apportioning capital costs violated Part I, Article 12 of the New Hampshire Constitution because it resulted in a disproportionate tax.

The parties agreed to submit both the WCSD's petition for a permanent injunction and the intervenor's petition for a declaratory judgment and injunctive relief to the court for summary judgment. The court ruled that the WCSD had failed to satisfy the procedural requirements for adopting allocation formulas. The court also ruled that until the WCSD properly adopted allocation formulas, it was not possible to determine if the town was due a refund. The court held that the town's recourse with respect to a refund was with the commissioner of revenue and not with the court. All parties moved for reconsideration, which the court denied.

### III. Analysis

"When reviewing the denial of a motion for summary judgment, we consider the pleadings and any accompanying affidavits, and all proper inferences drawn from them, in the light most favorable to the nonmoving party." *Purdie v. Attorney General*, 143 N.H. 661, 663 (1999) (quotation omitted). "Summary judgment may be granted only where no genuine issue of material fact is present, and the moving party is entitled to judgment as a matter of law." *Id.* (quotation and brackets omitted).

On appeal, the town argues that the court erroneously failed to: (1) enter judgment and award damages, including attorney's fees, on its behalf for the WCSD's statutory violation; and (2) find that the WCSD violated the State Constitution because it did not "tax in a manner authorized by statute." The WCSD argues that the trial court's finding of a statutory violation was erroneous. Because we agree with the WCSD, we need not address the other issues raised on appeal.

"We are the final arbiter of the meaning of a statute as expressed by the words of the statute itself. We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections." *Fillmore v. Fillmore*, 147 N.H. 283, 285 (2001) (quotation omitted). When construing a statute's meaning, we first

examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used. *McKenzie v. City of Berlin*, 145 N.H. 467, 470 (2000). "Where the statutory language is ambiguous or where more than one reasonable interpretation exists, we review legislative history to aid in our analysis." *Appeal of Inter-Lakes Sch. Bd.*, 147 N.H. 28, 32 (2001) (quotation omitted).

Since 1957, the WCSD has allocated its capital costs according to a formula that relies solely upon equalized valuation and its operating costs according to a formula that relies upon both equalized valuation and average daily pupil membership. The town argues that the WCSD's use of two formulas violates the operative statutes, which, the town asserts, since 1959, have required cooperative school districts to use a single formula for allocating both capital and operating expenses. The town misconstrues the relevant statutes.

As amended in 1959, the statute governing apportionment of costs provided as follows:

> During the first five years after the formation of a cooperative school district each pre-existing district shall pay its share of all capital outlay costs and operational costs in accordance with either one of the following formula [*sic*] as determined by a majority vote of the cooperative district meeting:
>
> I. All such costs shall be apportioned on the basis of the ratio that the equalized valuation of each pre-existing district bears to that of the cooperative district; or
>
> II. One-half of all such costs shall be apportioned on the basis of the ratio that the equalized valuation of each pre-existing district bears to that of the cooperative district and one-half shall be apportioned on the average daily membership for the preceding year.

Laws 1959, 195:1.

As amended, the statute prohibited a cooperative school district from using more than one formula to allocate capital costs: "all such" costs had to be allocated pursuant to the same formula. Similarly, a cooperative school district could not use more than one formula to apportion operating costs: "all such" costs had to be apportioned according to a single formula. If, as the town argues, the legislature had intended cooperative school districts to use the same formula for both operating and capital costs, the legislature would not have had to use the limiting word "such"; it would merely have referred to "all costs." When construing a statute, we must

give effect to all words in a statute and presume that the legislature did not enact superfluous or redundant words. *See Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 543 (1984).

The evident purpose of the 1959 amendments was to give cooperative school districts a choice of allocation formulas for both capital and operating costs. Before 1959, cooperative school districts had no choice with respect to how they allocated capital costs. The relevant statutes set forth a mandatory formula for allocating these costs. By contrast, cooperative school districts could choose between two formulas for allocating operating costs. In 1959, the legislature amended the applicable statutes to extend this choice to capital costs. We find this interpretation to be reasonable.

On the other hand, the town argues that the use of the word "all" and the use of the conjunction "and" in the first sentence of the statute indicates that all operating and capital costs were to be allocated according to one formula. The use of the word "either" was intended to give cooperative school districts a choice between two formulas by which to allocate both types of expenses. The town argues that the repetition of the word "all," and the plural word, "costs," in paragraphs I and II of the statute "refer back to the totality of costs of a district which are linked together." Because we believe that the town's interpretation is also reasonable, we review legislative history to aid in our analysis. *See Appeal of Inter-Lakes Sch. Bd.*, 147 N.H. at 32.

The 1959 amendments were made pursuant to House Bill 234. The original bill had two sections, one that applied to capital costs and the other that applied to operating costs. HB 234 (1959). The section pertaining to capital costs provided as follows:

> During the first five years after the formation of a cooperative school district, each pre-existing district shall pay its share of the costs of all capital improvements in accordance with either one of the following ways as determined by a majority vote of the cooperative district meeting:
>
> I. One-half the cost shall be apportioned on the basis of the ratio ... the equalized valuation of the pre-existing district bears to that of the cooperative district, and one-half the cost shall be apportioned in proportion to the average daily membership for the preceding year; or
>
> II. The cost shall be apportioned solely on the basis of the average daily membership for the preceding year.

> After said five year period the costs shall be apportioned on the basis of the ratio of the equalized valuation of the pre-existing district to the total equalized valuation of the cooperative school district at the time the funds therefor are appropriated, or, shall be apportioned on the basis of the above-described formulas I and II as may be determined by a majority vote of the cooperative district.

*Id.*

The section pertaining to operating costs permitted cooperative school districts to choose among three allocation formulas upon organization. *Id.* Cooperative school districts could allocate operating costs according to equalized valuation alone, combined equalized valuation and average daily pupil membership, or average daily pupil membership alone. *Id.* The original bill did not require cooperative school districts to wait until they had been in operation for five years before allocating operating costs according to a formula that relied upon equalized valuation alone. *Id.*

Following a public hearing, the bill was amended. The legislature collapsed the sections pertaining to operating and capital costs into one section, which set forth two formulas from which a cooperative school district could choose to allocate either operating or capital costs. *See* N.H.H. JOUR. 802-03 (1959). The legislature also created a new section requiring the cooperative school district to review its allocation formulas and permitted it to change the formulas to one of the two set forth in the prior section. *See id.*

As amended, the bill provided:

> 195:7 *Costs of Capital Outlay and Operation.* During the first five years after the formation of a cooperative school district each pre-existing district shall pay its share of all capital outlay costs and operational costs in accordance with either one of the following formulas as determined by a majority of the cooperative district meeting:
>
> I. All such costs shall be apportioned on the basis of the ratio that the equalized valuation of each pre-existing district bears to that of the cooperative district; or
>
> II. One-half of all such costs shall be apportioned on the basis of the ratio that the equalized valuation of each pre-existing district bears to that of the cooperative district and one-half shall be apportioned on the average daily membership for the preceding year. . . .

... 195:8 *Five-Year Period Reconsideration.* At the expiration of the first five-year period and at the expiration of each subsequent five-year period the basis for the apportionment of all such costs shall be subject to review, and the cooperative district may then by majority vote elect to apportion all such costs by the adoption of either formula I or formula II, as refined [*sic*] in section 7.

*Id.*

As the following comments from Senator Vaughn demonstrate, the purpose of the amendments was to ensure that cooperative school districts had the same choice of allocation formulas for both capital and operating costs:

Mr. President, as you know, we have every year changes to be made in the cooperative school law. This has been complicated and it has become necessary to make minor changes. The districts involved have the option of the payment of their part in their Districts. With respect to capital improvements, that has not been done. This bill gives the option of two separate methods of payment of the capital improvements. It allows it to be apportioned on the equalized valuation as it applies to each district within that cooperative district, or on the school population of those districts.

N.H.S. JOUR. 806 (1959).

Thus, the 1959 amendments permitted a cooperative school district to allocate capital costs and operating costs pursuant to different formulas. From 1959 until 1961, cooperative school districts could choose between two formulas, one that apportioned based upon equalized valuation alone and another that apportioned half of the costs based upon equalized valuation and the other half based upon average daily membership. In 1961, the legislature amended the relevant statutes to permit cooperative school districts to allocate either capital or operating costs pursuant to "[s]ome other formula." *See In re Kearsarge Regional School Dist.*, 138 N.H. at 213.

We find further support for this construction in the 1963 amendments to the cooperative school district laws, which created new provisions to govern cooperative school districts formed after June 30, 1963. *See* Laws 1963, 258:1. The new provisions permitted cooperative school districts to devise their own allocation formulas, and explicitly did not require the allocation formula for capital expenses to be the same as the formula for

operating expenses. *Id.* We see no reason why the legislature would permit cooperative school districts formed after June 30, 1963, to allocate operating and capital costs according to different formulas, but require cooperative school districts created before that date to use a single allocation formula for both operating and capital costs.

The town also argues that the WCSD has failed to follow statutory procedures for adopting allocation formulas. We disagree.

■ The town asserts that the WCSD failed to comply with the 1959 amendments, which, the town argues, required the WCSD to review and vote upon its allocation formulas. Read in context, however, the 1959 amendments did not permit cooperative school districts to review, and therefore change, their allocation formulas until the expiration of their first five years of operation.

RSA 195:8, as amended in 1959, stated that "[a]t the expiration of the first five-year period and at the expiration of each subsequent five-year period" the basis for apportioning capital and operating costs "shall be subject to review" and, during this period, the cooperative school district "may then by majority vote elect to apportion all such costs" by adopting one of the formulas set forth in RSA 195:7. Laws 1959, 195:2. This was the only procedure by which a cooperative school district, organized before 1959, could review and, if it desired, change its allocation formulas. Pursuant to Laws 1959, 195:2, such review was permissible only after the expiration of the school district's first five years of operation.

Thus, a cooperative school district organized before the 1959 amendments took effect was not permitted to review its allocation formulas until after expiration of its first five years of operation. In 1959, the WCSD was only in its second year of operation and, thus, was not yet permitted to review and change its allocation formulas.

By the time the WCSD was permitted to review its allocation formulas, it did so. In March 1963, as required by statute, the WCSD reviewed its allocation formulas and, by majority vote, elected to retain the formulas it had used since it was first organized in 1957.

■ According to the town, the warrant article that led to the 1963 vote was ineffective because it was presented by petition and did not ask voters if they wished to adopt one of the formulas set forth in RSA 195:7, as amended in 1959 and 1961. RSA 195:8, as amended in 1959 and 1961, however, did not require that the warrant article be presented in any particular fashion or that it contain any particular language. The statute required only that the WCSD review "the basis for the apportionment" of operating and capital costs and permitted, but did not require, the WCSD

"by majority vote" to elect to apportion capital and operating costs pursuant to one of the formulas set forth in RSA 195:7.

In 1963, the legislature again amended the statutes to make the five-year review of allocation formulas permissive, rather than mandatory. *See* Laws 1963, 258:7. Thus, after 1963, the WCSD was not required to review the methods by which it allocated capital and operating costs.

█We find the town's reliance upon the 1996 amendments to the relevant statutes unpersuasive. In 1996, RSA 195:7 and :8 were amended to include the introductory phrase: "If a cooperative school district was organized prior to July 1, 1963." Laws 1996, 158:5. The evident purpose of these amendments was merely to make clear that these provisions applied only to cooperative school districts organized before July 1, 1963, and did not apply to cooperative school districts organized after that date. Before the amendments, neither RSA 195:7 nor :8 included any language limiting their application to cooperative school districts organized before July 1, 1963.

The fundamental flaw in the town's analysis is its assumption that the applicable statutes did not permit the WCSD to apportion capital costs and operating costs by different formulas, unless the WCSD complied with RSA 195:7, I(c) (1999). To the contrary, since its inception in 1957, the WCSD has allocated its capital costs according to the formula set forth in RSA 195:7, I(a) (1999) and has allocated its operating costs according to the formula set forth in RSA 195:7, I(b) (1999). Thus, it has never been required to follow the procedure set forth in RSA 195:7, I(c). The procedure outlined in RSA 195:7, I(c) applies only when a cooperative school district seeks to allocate either its capital or operating expenses according to "[s]ome other formula."

Having concluded that the trial court's finding of a statutory violation was erroneous, we reject the town's argument that the WCSD acted unconstitutionally because it failed to secure the consent of district voters and failed to follow applicable statutes. *See* N.H. CONST. pt. I, art. 12.

*Reversed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.