2009 VT 25

**Michael L. HARRINGTON and Debra L. Harrington v. VERMONT AGENCY of TRANSPORTATION**

[971 A.2d 658]

No. 08-322

¶ 1. March 4, 2009. Plaintiffs, the owners of a parcel of land in Bennington, appeal from a jury verdict awarding them

$4,095 in compensation for the State's taking of a strip of their property by eminent domain to widen a highway. Plaintiffs contend that the trial court erred in excluding evidence relating to nearby land sales to the condemning authority, the Vermont Agency of Transportation (VTrans). We affirm.

¶ 2. The pertinent facts are undisputed and may be briefly recounted. Plaintiffs own a parcel of land on Route 9 in Bennington. Defendant VTrans is reconstructing this section of Route 9 in connection with a highway interchange project related to the "Bennington Bypass." A portion of plaintiffs' front yard was necessary for the project and was taken by eminent domain. See 19 V.S.A. §§ 501-510 (establishing procedures for taking of private property for state highway projects). Pursuant to 19 V.S.A. §§ 511 and 512, the Transportation Board held a hearing and awarded plaintiffs $4,095 in compensation for the taking. Plaintiffs then appealed that award to the superior court. *Id.* § 513.

¶ 3. The only question presented on appeal arises from the superior court's decision to bar evidence of a transaction involving another property fronting on Route 9. Before trial, VTrans moved to exclude evidence of, among other things, "any opinion of value of the property acquired based upon any other land acquisitions of [VTrans]." Plaintiffs opposed the motion, stating that plaintiffs intended to introduce such evidence "merely as a statement of fact, and not to argue from it as a determinant of value for that parcel or even the plaintiffs' parcel." Thus, plaintiffs contended, they "should not be prevented from introducing evidence of awards made to . . . other landowners in the vicinity of the plaintiffs' subject parcel."

¶ 4. The trial court granted the VTrans motion, concluding that evidence of the prices paid by VTrans to other property owners for their condemned land was inadmissible because such prices were not the result of arm's-length transactions. Specifically, the court noted, such transactions were not truly voluntary, because at least one of the parties was under compulsion to undertake the sale. The court concluded its discussion by noting that evidence of sales would be admissible only if, at a minimum, the sale was of "land of similar character located in the same vicinity and at a reasonably near point in time" and was a "voluntary, arms-length transaction."

¶ 5. Just before trial, and after the motion decision issued, plaintiffs' counsel informed the judge and VTrans in chambers that he intended to offer into evidence two deeds involved in VTrans' purchase of a residential home along Route 9. In two transactions, VTrans had purchased a residential property ("the Niles property") for $209,600 plus relocation assistance, reserved to itself a strip of land for the bypass project, and then reconveyed the remaining land to another party for $111,111.11. The court deferred ruling on the admissibility of the Niles documents until they were proffered at trial.

¶ 6. At that time, plaintiffs' counsel conceded that the court had correctly ruled, in granting the motion in limine, that evidence of payments made in other condemnation cases is inadmissible, but contended that the Niles transactions were arm's-length and voluntary. Further, counsel argued, "the $209,000 would be a comparable because it's right down the road." During the colloquy concerning this evidence, plaintiffs' counsel noted, without prompting from opposing counsel or the judge, that the owners of the Niles property "were threatened with the same thing my clients are threatened with, a strip piece taken." The court inquired whether the property would have been condemned if the sale had not "worked out," and plaintiffs' counsel responded that "an order of taking" had already been filed.

¶ 7. Plaintiffs' counsel then argued that the sale was voluntary because the entire property was sold, while only the strip fronting on Route 9 was subject to condemnation. In response, VTrans' counsel stated, without opposition, that the Niles property would, after the strip was taken, have no access to Route 9. The court agreed with VTrans and excluded the evidence, noting that "[t]he owners were still, obviously aware that there was a condemnation order, and that if they did nothing, this strip was going to be taken." In light of the uncertain factual underpinnings of the Niles transfers — uncertainties that plaintiffs had proffered no evidence to clarify — the court concluded that the evidence, though relevant, should be excluded because of a high probability of juror confusion and undue prejudice. See V.R.E. 403. The jury, like the Transportation Board before it, awarded plaintiffs $4,095, and plaintiffs filed this appeal.

¶ 8. We review the trial court's decision to exclude the evidence of the Niles transactions under a deferential standard, and will reverse only if the trial court abused its discretion. *State v. Derouchie*, 153 Vt. 29, 34, 568 A.2d 416, 418 (1989). The party claiming error in such a discretionary ruling "must show that the court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable." *State v. Parker*, 149 Vt. 393, 401, 545 A.2d 512, 517 (1988) (quotation omitted). This burden is "a heavy one." *Id.*

¶ 9. Under this standard, we find no basis to reverse. Plaintiffs concede, and we agree, that only arm's-length transactions are relevant to the determination of fair market value for the condemned strip of land at issue here. The only question remaining, then, is whether a transaction between VTrans and landowners who faced the certain prospect of their land being cut off from access to Route 9 by condemnation was between a willing buyer and a willing seller. None of our prior cases directly controls the answer to that question. Among other courts, the majority view is that sales under threat of condemnation are not arms-length and are therefore not admissible. See, e.g., *In re Condemnation of Land for Controlled Access Highway Purposes*, 548 P.2d 756, 764 (Kan. 1976) ("Such a transaction is not an arm's-length sale between parties since the threat of condemnation affects the price required to be paid."); *Brown v. Miss. Transp. Comm'n*, 98-CA-00455-SCT (¶ 29), 749 So. 2d 948 (Miss. 1999) ("Because they are more in the nature of a compromise and are not, therefore, fair indicators of market value, sales to an agency with condemning authority are not admissible in evidence . . . ."); *State Dep't of Highways v. DeTienne*, 707 P.2d 534, 538 (Mont. 1985) (same).

¶ 10. The rule in the cases just cited has been the position of the vast majority of courts for, at a minimum, nearly a century. See 2 P. Nichols, The Law of Eminent Domain § 456, at 1201 (1st ed. 1917) ("If a sale is made to [an entity] about to institute condemnation proceedings if it cannot acquire the land by purchase at a satisfactory price, the price paid is not a fair test of market value . . . ."; citing cases). Of course, agencies that sometimes exercise condemnation powers may, at other times, purchase land for purposes entirely unconnected with any potential or pending condemnation. In that limited set of cases, evidence of the sale may be admissible. *Mooney v. City of Overland Park*, 153 P.3d 1252, 1255 (Kan. 2007) (where the record indicated that "the possibility of condemnation was not a factor in the . . . sale," despite the fact that purchaser was a utility with eminent-domain powers, evidence of sale was not inadmissible for that reason; mere existence of the power of eminent domain does not render inadmissible every transaction involving the utility); *O'Malley v. Commonwealth*, 65 N.E. 30, 31 (Mass. 1902) (Holmes, C.J.) ("We cannot say merely

because of the name of the purchaser that the sale was not a fair transaction in the market rather than a compulsory settlement.").

¶ 11. In opposition to this line of authority, plaintiffs cite two New Hampshire cases: *Eames v. Southern New Hampshire Hydro-Electric Corp.*, 159 A. 128 (N.H. 1932), and *In re Lakeshore Estates*, 543 A.2d 412 (N.H. 1988). In *Eames*, the New Hampshire Supreme Court expressly rejected the majority view, at least insofar as the majority view at that time amounted to a per se rule excluding all sales to condemnors. 159 A. at 130. The *Eames* court noted, nonetheless, that such sales, although they may sometimes be probative, are "less likely to have useful evidentiary value than sales to strangers." *Id.* The court further clarified that, although it rejected the notion that condemnor involvement was a "conclusive test of . . . probative character," "where the offer is of a sale to the condemnor, the court must . . . find that the circumstances of the sale, as respects the freedom of contract, are such that the sale has some tendency to evidence market value before it is relevant." *Id.* The court concluded, however, that the trial court's decision to exclude the evidence — the sole stated basis for which was the trial court's opinion that it had "too many cases" on its docket — was error, as there had been no evidence introduced concerning the circumstances of the proffered sale. *Id.* at 131. The later New Hampshire case, *Lakeshore Estates*, does not involve a sale to a condemnor; it simply cites *Eames* favorably for a related point of law. 543 A.2d at 416.

¶ 12. As noted, even the *Eames* court was at pains to make clear that, although some sales to condemnors *might* be admissible, not all such sales would be, given that they were generally "less likely to have useful evidentiary value than sales to strangers." 159 A. at 130. Indeed, even if sales to condemnors were admissible un-

der precisely the same terms as other sales, trial judges would retain wide discretion under Rule 403 to exclude evidence on grounds of confusion, undue prejudice, or waste of time. The trial court here was well within its discretion in excluding the evidence.

¶ 13. The proffer here, as noted, was to introduce the deeds for a series of sales that were facially quite unusual. VTrans paid $209,600 for the Niles parcel, agreed to reimburse the sellers up to $55,400 for construction of a replacement home to the extent the costs exceeded $209,600, and for relocation expenses. VTrans later conveyed the parcel, minus the strip it had intended to condemn, to a third party for $111,111.11. It was uncontroverted, as well, that when VTrans retained the strip of land, it cut the remainder of the parcel off from access to Route 9. Nothing in the record suggests that plaintiffs' property was similarly affected by the condemnation. Far from attempting to prove that the Niles sale was untainted by the prospect of condemnation, plaintiffs' counsel conceded at trial that the owners of the other parcel "were threatened with the same thing my clients are threatened with, a strip piece taken." The burden to prove the admissibility of the evidence was at all times on plaintiffs, and that burden required that they show that the transfer was made without "compulsion, coercion or compromise" occasioned by the threat of condemnation. *Hannan v. United States*, 131 F.2d 441, 442-43 (D.C. Cir. 1942) (even assuming that evidence of sales to United States *might* be admissible, burden was on proponent to establish that purchase was arm's-length; failure to do so put proponent "in no position to complain of its exclusion"). The trial court here was well within its discretion to exclude the evidence, which appeared marginally probative at best, and quite confusing in any event. The trial court did not err in avoiding the mini-trial that would have been required to elucidate the

probative value — if any — of the Niles transactions.

*Affirmed.*